DR. DONALD WILSON HEWITT, Plaintiff-Appellant, and BETTY JANE BZOVI, Plaintiff, *v.* WAIKIKI SHOPPING PLAZA, a limited partnership by its general partner, WAIKIKI SHOPPING PLAZA, INC., a Hawaii corporation, Defendant-Appellee, and DILLINGHAM CORPORATION, doing business as Hawaiian Dredging & Construction Company; DEMOLITION ENGINEERING, INC., a Hawaii corporation, and FONG INN ESTATE, LIMITED, a Hawaii corporation, Defendants, and FONG INN ESTATE, LIMITED, a Hawaii corporation, Defendant and Third-Party Plaintiff, *v.* WILLIAM KOON HEE MAU and JEAN RACHEL MAU, Third-Party Defendants

NO. 10793

(CIVIL NO. 50203)

JULY 11, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this dispute between co-tenants of real property over the use of that property, Plaintiff-Appellant Donald Wilson Hewitt (Hewitt) appeals the judgment below in favor of Defendant-Appellee Waikiki Shopping Plaza (WSP), a limited partnership. We affirm.

### FACTS

In order to facilitate an understanding of the facts, we have included in the opinion a diagram showing the relationship of Lauula Street (Lauula Street) in Waikiki, the subject of the dispute, and the other properties owned or leased by the parties.

Lauula Street is a paved 260-foot long, 20-foot wide, privately owned roadway in Waikiki. Designated as Lot 84 on Map 4 (Map 4), Land Court Application No. 551,[1] Lauula Street is parallel to Kalakaua Avenue and connects Seaside and Royal Hawaiian Avenues. Although owned privately by Hewitt, WSP, Fong Inn Estate, Ltd. (Fong Inn), and others,[2] Lauula Street has been open to and used by the public as a roadway since the 1930's. Seaside and Royal Hawaiian Avenues are public streets.

---

[1]All of the properties referred to in the opinion are shown on various maps filed with Land Court Application No. 551, and are registered under the Torrens title system of land registration, provided for in Hawaii Revised Statutes (HRS) chapter 501 (1976). *In re Campbell,* 66 Haw. 354, 662 P.2d 206 (1983). The lot numbers shown on the diagram are their land court registration numbers, and all references to maps in the opinion are to those filed with Land Court Application No. 551.

[2]The record does not disclose the names of the other owners.

Hewitt owns Lot 82 (Lot 82) of Map 4. Hewitt's title to Lot 82 includes a one-eighth (1/8th) undivided interest in Lauula Street. Hewitt also owns Lot 81 (Lot 81) of Map 4. His title to Lot 81 does not include an undivided interest in Lauula Street. Since 1974, Hewitt has leased Lot 82, together with his undivided interest in Lauula Street, and Lot 81, to Dollar Rent-A-Car (Dollar). Dollar uses Lauula Street and Royal Hawaiian Avenue for ingress to and egress from both Lots 81 and 82.

WSP is the owner of Lots 3-A-1, 3-A-2, 3-A-3, 3-A-4, as shown on Map 28, Lot 4-A, as shown on Map 12, Lots 4-B-1, 4-B-2, 4-B-3, 5-A, 5-B, 5-C and 5-D, as shown on Map 45, and an "undivided two-eighths (2/8ths) interest" in Lauula Street. WSP is also the lessee of Lots 3-B-1, 3-B-2 and 3-B-3, as shown on Map 13, under a lease from Fong Inn. The lease also demises to WSP "an undivided one-fourth (1/4th) part of and interest in and to a perpetual right-of-way in common with the other owners thereof, over, across, along and upon [Lauula Street]." Hewitt's and WSP's undivided interests in Lauula Street are subject to "Rights of Way in favor of various owners of interests in [Lauula Street]."

In 1976, WSP began construction of an eight-story shopping and parking complex now known as the "Waikiki Shopping Plaza" (plaza) on the properties it owned or leased, with the exception of Lots 4-A, 5-A, and 5-B. The plaza was completed in January 1978. The side of the plaza which is on Lots 3-B-1, 4-B-1, and 5-D abuts Lauula Street along its entire length and has portals opening onto Lauula Street. Through those portals deliveries are made to and from WSP's tenants, and automobiles enter and leave the plaza's parking facilities. Garbage collections are also made through those portals. Thus, all vehicular traffic in and out of the plaza travels over Lauula Street.

## PROCEDURAL HISTORY

On December 15, 1976, prior to completion of the plaza, Hewitt filed suit against WSP and other defendants.[3] The allegations pertinent to this appeal were that the design of the plaza called for all vehicular traffic to enter and exit over Lauula Street, which would cause congestion, blockage of Lauula Street, excessive noise, fumes and "garbage odors." Hewitt also alleged that the design was "wrongful and improper, grossly negligent or done with reckless indifference and constitutes a substantial violation of [Hewitt's] rights in [Lauula Street]." The violation of Hewitt's rights was alleged to have arisen from the fact that those lots owned or leased by WSP adjacent to and having easement rights in Lauula Street also have frontage on other public streets which could be used for ingress and egress, and those lots not adjacent to Lauula Street had no right to the use of Lauula Street. Hewitt also alleged that WSP had not filed an Environmental Impact Statement (EIS) before constructing the plaza, as required by Hawaii Revised Statutes (HRS) chapter 343 (1985).[4] Hewitt prayed that WSP be enjoined from proceed-

---

[3]The original complaint included Betty Jane Bzovi (Bzovi) as plaintiff, and Dillingham Corporation, Demolition Engineering, Inc. and Fong Inn Estate, Limited (Fong Inn), as defendants. Fong Inn filed a third-party complaint against William Koon Hee Mau and Jean Rachel Mau. On July 7, 1981, all the parties stipulated to the dismissal with prejudice of all of Bzovi's claims against WSP. Also, all defendants other than WSP have been dismissed, as well as Fong Inn's third-party complaint.

[4]This matter was briefed and argued under HRS chapter 343 (1976), the law applicable at the time of suit. Since then the 1985 replacement volume incorporating amendments made to chapter 343 since 1976 was published by the Revisor of Statutes under the

ing with the plaza as designed and be required to redesign it, but did not seek damages. Hewitt's motion for a preliminary injunction was denied on September 27, 1977.

On April 26, 1984, the lower court granted WSP's Motion for Summary Judgment on Hewitt's HRS chapter 343 claim. Trial began on April 15, 1985, and the trial court filed its Findings of Fact, Conclusions of Law and Decision on June 13, 1985. The trial court concluded that WSP was a co-owner of an undivided fee simple interest in and to Lauula Street and was entitled to reasonable use of the entire roadway. The trial court also concluded that Hewitt failed to prove that WSP's use was unreasonable.

Hewitt raises two issues on appeal:

1. Whether the trial court erred in granting WSP's motion for summary judgment on Hewitt's HRS chapter 343 claim; and

2. Whether the trial court erred in concluding that WSP's use of Lauula Street as the owner of an undivided interest was not unreasonable.

We answer no to both issues.

I.

Hewitt initially argues that the lower court improperly granted WSP's motion for summary judgment on Hewitt's claim that WSP failed to obtain an EIS, as required by HRS chapter 343. The argument is without merit.

In developing the plaza, WSP applied to the Zoning Board of Appeals (ZBA) of the City and County of Honolulu for a variance from the provisions of the City's Comprehensive Zoning Code applicable to its properties, relating to front yards, maximum density, height set-back regulations, and off-street parking requirements. After holding public hearings on WSP's variance application, ZBA issued Findings of Fact

---

authority of HRS § 23G-16 (Supp. 1984).

Under HRS § 343-4(a)(2)(D) (1976), an Environmental Impact Statement was required for "all actions proposing any use within the Waikiki-Diamond Head area of Oahu[.]" The applicability of the provision is discussed in part 1 of the opinion. HRS § 343-4 (1976) has been repealed, Act 140, §§ 7, 8, 1983 Haw. Sess. Laws 253, 256, and its provisions are now found in HRS § 343-5 (1985).

and Conclusions of Law and Decision and Order (ZBA Order) approving the variance on August 8, 1974. The ZBA Order included a finding that no EIS was required for the plaza.[5] Demolition of the then existing buildings on the site started on March 18, 1976, and construction of the plaza started on July 15, 1976.[6]

HRS chapter 343, entitled Environmental Quality Commission and Environmental Impact Statements, was enacted in 1974.[7] Act 246, 1974 Haw. Sess. Laws 707. Section 3 of Act 246 provided:

> This Act shall take effect upon its approval. This Act is not retroactive and shall not apply to those actions which have received approvals from appropriate agencies authorized to approve actions covered by this Act. *For those actions pending approval as of the effective date of this Act or for which an applicant requests approval prior to the effective date of initial rules and regulations adopted by the commission, the agency authorized to approve such action, at its discretion, may require a statement from the applicant;* provided, that any statement which has been accepted on or before the effective date of rules and regulations shall be deemed to be in compliance with this Act and no further statement shall be required. [Emphasis added.]

Act 246 was approved on June 15, 1974, and the rules and regulations adopted by the Environmental Quality Commission established by

---

[5]The Zoning Board of Appeals (ZBA) made the following finding:

The Board has considered Act 246 adopted by the Legislature of the State of Hawaii, effective June 15, 1974, which requires an environmental impact statement in certain cases. *The Board finds that such statement is not required in this case and that the proposed action through the variance will not have a significant effect on the environment.* [Emphasis in original.]

ZBA is an agency as defined under HRS § 343-1(3) (1976). Section 343-1 was amended and is now HRS § 343-2 (1985). Act 140, § 5, *supra*, at 255.

[6]In the briefs WSP argues that Hewitt's HRS chapter 343 claim is time barred under HRS § 343-6(a) (1976), since the action was instituted more than 180 days after demolition of the existing building on WSP's property. Hewitt counters with the argument that the limitation period begins to run from the date construction of the new building began. Act 140, § 10, *supra*, at 260, renumbered HRS § 343-6 to § 343-7 and reduced the limitation period to 120 days. Our discussion of the effective date of chapter 343's provisions as contained in Act 246, § 3, 1974 Haw. Sess. Laws 707, chapter 343's enacting legislation, renders the issue irrelevant.

[7]Act 140, *supra*, at 255, amended the title of HRS chapter 343 to read "Environmental Impact Statements."

chapter 343[8] became effective on June 2, 1975.

In the instant case, ZBA held public hearings on WSP's application on June 13 and 27, 1974. Clearly, WSP's application was pending approval by ZBA on the effective date of Act 246, and had been approved prior to the effective date of the rules and regulations promulgated under the act. Thus, the EIS requirement of HRS § 343-4(a)(2)(D) (1976)[9] was not applicable to the plaza. ZBA's finding that the EIS was "not required" was superfluous. Summary judgment was properly granted.

## II.

Hewitt attacks the trial court's findings of fact nos. 11, 12, 13 and 14,[10] and conclusions of law nos. 2, 3, and 4.[11]

---

[8]Act 140, § 9, *supra*, at 259, deleted reference in HRS chapter 343 to the Environmental Quality Commission, and vested the rule-making function in the Environmental Quality Council.

[9]See note 5, *supra*.

[10]Findings of fact nos. 11, 12, 13 and 14 read as follows:

11. Hewitt leases Lot 82, Lot 81, and his interest in Lauula Street to Dollar Rent-A-Car ("Dollar"). Lot 82 and Hewitt's interest in Lauula Street have been subject to the same lease since 1974. Prior to 1974, Lot 82 (along with Lot 81) and Hewitt's interest in Lauula Street had been lease [sic] to the operator of a different car rental operation since 1969, Budget Rent-A-Car ("Budget"). Prior to 1969, Hewitt leased Lot 82 (along with Lot 81) and his interest in Lauula Street to a Mr. Wong for use as a parking lot for the use and benefit of lots which were not adjacent to Lauula Street. The car rental operations (since 1969) have covered both Lot 82 and Lot 81. Lot 81 is not adjacent to Lauula Street. In using Lot 82 and the other lots, the lessees thereof have used Lauula Street for ingress and egress.

12. WSP has constructed the Project on the Fee Simple and Leased Lots in such manner that the Project's parking entrance/exit and loading bay front Lauula Street. The construction of the Project was completed and a certificate of occupancy was obtained for the Project. The Court also finds that:

a. Lauula Street has always been used as a roadway lot since Plaintiff's acquisition of his interest therein.

b. At that time, the businesses around Lauula Street were rental units and small commercial operations. There were garbage pick ups along Lauula Street for the apartment and other rental units along Lauula Street. Also, there is some evidence of deliveries occurring along Lauula Street for the commercial establishments in the area.

13. Prior to the time the Project was constructed, (i) Waikiki was a busy commercial area, (ii) Lauula Street had been and was, at that time, being used as a roadway by both the tenants of the adjoining properties, and also by the public in general and (iii)

A trial court's findings of fact will not be set aside on appeal "unless (1) the findings are not supported by substantial evidence or (2) a

---

that there was a fair amount of vehicular traffic being generated along Lauula Street, which increased over the years, as the general Waikiki area developed.

14. After the construction of the Project, the Court finds that:

a. The findings of No. 13 above remain true, and

b. Lauula Street is still being used as a roadway. Although traffic has increased, based upon the car counts in evidence, it is apparent that on a normal day, slightly over 50% of the traffic along Lauula Street is "through" traffic. In other words, it is traffic generated from operations other than the Project, and lots adjacent to Lauula Street.

¹¹Conclusions of law nos. 2, 3, and 4 read as follows:

2. Hewitt has failed to show by a preponderance of the evidence that his rights as a co-owner of Lauula Street have been violated as a result of the activities of WSP for the following reasons:

a. There has been no showing of any ouster or prevention of the use of Lauula Street by Hewitt.

b. There has been no showing that WSP's use of Lauula Street has resulted in any harm to Lauula Street.

c. There has been no showing that WSP's use of Lauula Street was unreasonable.

d. Finally, the Court cannot accept as a matter of law Hewitt's assertions that, merely because lots which were not adjacent to Lauula Street may be benefiting from the use of Lauula Street, it is per se overburdened. Although it is clear that, if WSP's only right and interest in and to Lauula Street was an easement, the use of the easement for the benefit of non-dominant estates would be per se unreasonable, it is clear that WSP's interest is not merely an easement. WSP has a fee simple interest in Lauula Street. In addition, it holds a leasehold interest in (1) an additional 1/4 interest in Lauula Street in fee and (2) Fong Inn's interest in a right of way across Lauula Street. The Court cannot, as a matter of law, say that solely the law of easements controls since WSP's interest (as to an undivided 2/8ths) is as a fee owner. Thus, examining this matter from the law of co-tenancy, it is clear that a co-tenant may reasonably use the co-owned property to its fullest extent, as long as that co-owner does not oust or prevent the other co-owners from using the co-owned property or does not waste the co-owned property. Thus, the Court cannot accept the strict rule of law regarding the use of easements to serve only the interests of the dominant estate simply because WSP's interest in Lauula Street is more than an easement - it is a co-owner.

3. Plaintiff's allegation of breach of fiduciary duty rests on a finding by this Court of overuse, abuse, or overburdening of Lauula Street by Defendant. Inasmuch as no such finding has been made, the Court need not reach this issue.

4. With regard to any injunctive relief sought by Hewitt, any claim that Hewitt should be allowed injuctive [sic] relief is without merit for the following reasons:

a. Hewitt has not shown that he has acted equitably in this matter. The crux of his claims is that WSP is using Lauula Street to benefit lots which are not adjacent to Lauula Street. However, it has been shown that Hewitt is engaged in the same activities with respect to Lot 81 and Mr. Wong's apartments. Thus, given the defense of unclean hands, he should not prevail in his claim for injunctive relief.

b. Furthermore, Hewitt has not shown that he has no adequate remedy at law.

reviewing court, upon examination of all the evidence, is left with a definite and firm conviction that a mistake has been made." *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 139, 681 P.2d 580, 584 (1984). Although a trial court's conclusions of law are freely reviewable on appeal, *Molokoa Village Development Co. v. Kauai Electric Co.,* 60 Haw. 582, 593 P.2d 375 (1979), they will not be overturned where they are supported by the trial court's findings of fact and apply the correct rule of law. *Nani Koolau Co. v. K & M Construction, Inc., supra.* We have carefully examined the record and find that the trial court's findings of fact are not clearly erroneous and that its conclusions of law are correct.

In essence, Hewitt argues that since the undivided interests in Lauula Street are subject to the rights of way of the other co-tenants, the use of Lauula Street is governed by the law of easements. Hewitt's reliance on the law of easements is misplaced. The applicable law is the law relating to the rights of tenants-in-common. "When two persons each purchase an undivided * * * interest in land * * * their rights and obligations are determined by the law applicable to tenants in common." *Falaschi v. Yowell,* 24 Wash. App. 506, 508-09, 601 P.2d 989, 990 (1979). Although co-tenants stand in a fiduciary relationship to each other, *City & County of Honolulu v. Bennett,* 57 Haw. 195, 552 P.2d 1380 (1976), each co-tenant has the right to full enjoyment of the property within reason. *United States v. State of Washington,* 520 F.2d 676, 685 (1975).

In *De Mello v. De Mello,* 24 Haw. 675 (1919), the supreme court said,

> since the possession of one joint tenant, or tenant in common, is the possession of all, and all are equally entitled to the use and enjoyment of the property, it follows as a general rule that one tenant cannot maintain an action at law against his cotenant in respect of the common property unless he has been disseized or ousted therefrom.

*Id.* at 676. And where the commonly held property is a roadway, one co-owner may use the property to its fullest extent as a roadway so long as he does not interfere with his co-tenant's use of the roadway for the same purposes. *Moffatt v. Speidel,* 2 Haw. App. 334, 631 P.2d 1205 (1981). Additionally, a lessee of an undivided interest in commonly owned property has a right to share possession of the property with the other co-owners for the term of the lease. *Jackson v. Low Cost Auto Parts, Inc.,* 25 Ariz. App. 515, 517, 544 P.2d 1116, 1118 (1976), citing

*Johnston v. DeLay,* 63 Nev. 1, 158 P.2d 547 (1945).

As co-owners of Lauula Street, Hewitt and WSP are both entitled to reasonable use and enjoyment of Lauula Street, as long as they do not prejudice or interfere with the other co-owner's use, *Jackson v. Low Cost Auto Parts, Inc., supra; Moffat v. Speidel, supra,* and their use does not result in disseisen or ouster. *De Mello v. De Mello, supra.* Our examination of the record convinces us that the court was correct in holding that Hewitt had failed to show that WSP had violated his rights as a co-owner of Lauula Street.

First, Hewitt does not claim ouster or disseisen. Second, although Hewitt contends that WSP's use of Lauula Street was unreasonable because of the increased traffic generated by the businesses in the plaza, the evidence shows that a substantial amount of the traffic on Lauula Street, before and after construction of the plaza, was "through" traffic between Royal Hawaiian and Seaside Avenues. Moreover, even prior to the construction of the plaza, merchants and apartment buildings occupying lots adjacent to Lauula Street had used the roadway for pickup and delivery of merchandise and for pickup of garbage. Therefore, the character of the use of Lauula Street was not altered, and WSP's use was not unreasonable and did not prejudice Hewitt in his use of the street.

The trial court was also correct in holding that Hewitt did not come into this case with "clean hands." Hewitt's lessee, Dollar, uses Lauula Street for access to and from Lot 82 in spite of the fact that Lot 82 has access directly onto Royal Hawaiian Avenue. Additionally, Lauula Street is being used by Dollar as access for Lot 81 which is non-adjacent to Lauula Street, although there is nothing about Hewitt's title to Lot 81 or his lease to Dollar that entitles either of them to use Lauula Street for such purpose.

Affirmed.

*Edward C. Kemper* (*Kemper & Watts* of counsel) on the briefs for plaintiff-appellant Hewitt.

*Wallace S. Fujiyama, Paul S. Sato & Kelley G. A. Nakano* (*Fujiyama, Duffy & Fujiyama* of counsel) on the briefs for defendant-appellee WSP.