279 P.3d 55

**Joseph PAVSEK and Ikuyo Pavsek, Plaintiffs–Appellants,**

v.

**Todd W. SANDVOLD; Juliana C. Sandvold; Kent Sather; Joan Sather; Waialua Oceanview LLC; Hawaii Beach Homes, Inc.; Hawaii Beach Travel, Inc.; and Hawaii on the Beach, Inc., Defendants–Appellees,**

and

**John Does 1–10; Jane Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10 and Doe Entities 1–10, Defendants.**

No. 29179.

Intermediate Court of Appeals of Hawai'i.

June 13, 2012.

As Corrected Aug. 3, 2012.

Paul Alston, Thomas E. Bush (Alston Hunt Floyd & Ing), Ken T. Kuniyuki, on the briefs and argument, for plaintiffs-appellants.

Gregory W. Kugle, Noelle B. Catalan (Damon Key Leong Kupchak Hastert), on the briefs and argument, for defendants-appellees, Todd W. Sandvold, Juliana C. Sandvold, and Hawaii Beach Homes, Inc.

David B. Rosen (The Law Office of David B. Rosen, ALC), on the briefs and argument, for defendants-appellees, Waialua Oceanview, LLC, Hawaii Beach Travel, Inc., and Hawaii on the Beach, Inc.

Rosemary T. Fazio, Francis P. Hogan, Zachary J. Antalis, Ashford & Wriston, on the briefs and argument, for defendants-appellees, Kent Sather and Joan Sather.

NAKAMURA, C.J., and FUJISE and REIFURTH, JJ.

Opinion of the Court by NAKAMURA, C.J.

This case arises out of a dispute over the alleged illegal rental and use of residential properties as bed and breakfast homes or transient vacation units. Plaintiffs–Appellants Joseph Pavsek and Ikuyo Pavsek (collectively, the Pavseks) live on Papailoa Road on the North Shore of Oʻahu. The Pavseks

filed a lawsuit in the Circuit Court of the First Circuit (Circuit Court) against the owners of three residential properties on Papailoa Road and companies involved in managing and arranging rentals for those properties. In their complaint, the Pavseks alleged that the three properties were being used for short-term rentals in violation of the Land Use Ordinance (LUO) of the City and County of Honolulu (City), and sought injunctive relief and damages. The Circuit Court dismissed the complaint with prejudice.[1]

This appeal presents the question of whether Hawaii Revised Statutes (HRS) § 46–4(a) (Supp. 2011)[2] creates a private right of action that authorizes a "directly affected" private real estate owner to seek judicial enforcement of the LUO, without first bringing his or her claim before the administrative agency charged with enforcing the LUO. We hold that: (1) HRS § 46–4(a) does create a private right of action in favor of a real estate owner directly affected by an alleged LUO zoning violation, but that the owner's action is subject to the doctrine of primary jurisdiction; (2) under the doctrine of primary jurisdiction, the Pavseks are required to seek an administrative determination of their claim that their neighbors have been violating the LUO before proceeding with their suit to obtain judicial enforcement of the LUO; (3) the nuisance claims raised by the Pavseks in their complaint were derived from their claim of the LUO violation and therefore are also subject to the primary jurisdiction doctrine; (4) the Circuit Court properly dismissed the claims alleging breach of fiduciary duty and unjust enrichment for failure to state a claim for relief; and (5) the Circuit Court's remedy of dismissal *with prejudice* of the claims subject to the primary jurisdiction doctrine is not consistent with the remedies applicable to that doctrine. Accordingly, we vacate the Circuit

Court's dismissal of the claims that are subject to the primary jurisdiction doctrine; we remand the case with instructions that as to those claims, the Circuit Court consider the appropriate remedy under the primary jurisdiction doctrine; and we affirm the Circuit Court's dismissal of the claims for breach of fiduciary duty and unjust enrichment.

## BACKGROUND

### I.

The Pavseks are owner-occupants of a residence on Papailoa Road. Papailoa Road runs parallel to the beach and is near two tourist attractions, Laniakea Beach, known for the presence of sea turtles, and the beach that served as the set of the ABC television show "Lost." Defendants–Appellees Todd W. Sandvold and Juliana C. Sandvold (Sandvolds), Kent Sather and Joan Sather (Sathers), and Waialua Oceanview LLC (Waialua Oceanview) (collectively, Owner Defendants) own residences on Papailoa Road. In their complaint, the Pavseks alleged that Defendant–Appellee Hawaii Beach Homes, Inc. (HBH) "acts as a booking agent and/or property manager for rentals" of the Sandvolds' and the Sathers' properties, and that Defendants–Appellees Hawaii Beach Travel, Inc. (HBT) and Hawaii on the Beach, Inc. (HOB) act, respectively, as "a booking agent for rentals" and "a booking agent and property manager for rentals" of Waialua Oceanview's property.[3] The Pavseks' property is near, but not adjacent to, Owner Defendants' properties. The Pavseks, the Sandvolds, and certain other lot owners on Papailoa Road are co-tenants in a private right of way that provides beach access from Papailoa Road.

### II.

The lots on Papailoa Road owned by the Pavseks and Owner Defendants are located

---

1. The Honorable Victoria A. Marks presided.

2. HRS § 46–4(a) provides in relevant part:
 The council of any county shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section. The ordinances may be enforced by appropriate fines and penalties, civil or criminal, or by court order at the suit of the county or the owner or owners of real estate directly affected by the ordinances.

3. We will collectively refer to the Sandvolds, the Sathers, Waialua Oceanview, HBH, HBT, and HOB as "Defendants."

in a residential district and are zoned "R-5." LUO § 21-3.30, Zoning Map 17. Under the LUO, properties zoned R-5 are generally limited in use to detached one-family dwellings, detached two-family dwellings, and public uses and structures. LUO Table 21-3.

Property that is zoned R-5 cannot be used as a bed and breakfast home or a transient vacation unit unless a nonconforming use certificate has been obtained. *See* LUO §§ 21-4.110-1, 21-4.110-2.[4] The LUO defines a "bed and breakfast home" as "a use in which overnight accommodations are provided to guests for compensation, for periods of less than 30 days, in the same detached dwelling as that occupied by an owner, lessee, operator or proprietor of the detached dwelling." LUO § 21-10.1. The LUO defines a "transient vacation unit" as "a dwelling unit or lodging unit which is provided for compensation to transient occupants for less than 30 days, other than a bed and breakfast home." *Id.* Owner Defendants do not claim that they have a nonconforming use certificate that authorizes them to use their properties as a bed and breakfast home or a transient vacation unit.

### III.

The Pavseks filed a complaint against Defendants in the Circuit Court. In Count I, which sought enforcement of the LUO against all Defendants, the Pavseks alleged that Defendants have been advertising and renting Owner Defendants' properties as transient vacation units or bed and breakfast homes in violation of the LUO. The Pavseks stated that the "illegal" rentals have caused irreparable injury to them in the form of

increased traffic noise and congestion in this residential neighborhood; negatively affected the value of [their] property; prevented or interfered with [their] use and enjoyment of [their] lot for residential purposes; imperiled and/or destroyed the residential character of the neighborhood in violation of the intent of the zoning ordinances; overburdened a private right of

way easement providing beach access for [their] lot; and has created increased noise levels, trash, litter, discarded cigarette but[t]s, beer bottles and drug paraphernalia in this residential neighborhood and the beach in front of this neighborhood.

The Pavseks further asserted in Count I that they have complained about the "illegal activities" to the City's Department of Planning and Permitting (DPP) on numerous occasions "to no avail." Based on the DPP's investigations arising out of their complaints, the Pavseks alleged "upon information and belief" that the DPP had issued one citation to the Sathers and two citations to Waialua Oceanview, and the Pavseks indicated that the DPP apparently had not issued any citations to the Sandvolds. The Pavseks cited HRS § 46-4 as the basis for their entitlement to bring their lawsuit to enforce the LUO, and they requested injunctive relief to permanently bar Defendants from any further and continued violation of the LUO.

In addition to Count I, the Pavseks asserted the following counts:

Count II—Nuisance against Owner Defendants for allowing their properties to be used for illegal rentals;

Count III—Conspiracy and/or Aiding and Abetting a Nuisance against HBH, the Sandvolds, and the Sathers;

Count IV—Conspiracy and/or Aiding and Abetting a Nuisance against HBT, HOB, and Waialua Oceanview;

Count V—Breach of Fiduciary Duty against the Sandvolds for overburdening the right of way jointly owned with the Pavseks as a result of the Sandvolds' illegal rentals;

Count VI—Aiding and Abetting a Breach of Fiduciary-Duty against HBH; and

Count VII—Unjust Enrichment against all Defendants for profiting at the expense of the Pavseks from the illegal rentals of Owner Defendants' lots.

The Pavseks filed a motion for preliminary injunction to prohibit Defendants from ad-

---

4. With respect to properties zoned R-5, LUO §§ 21-4.110-1 and 21-4.110-2 provide that failure to obtain a nonconforming use certificate within nine months of December 28, 1989, shall mean that as of December 28, 1989, the use of the property as a transient vacation unit or bed and breakfast home is an illegal use.

vertising and renting Owner Defendants' properties as transient vacation units or bed and breakfast homes. Defendants filed memoranda in opposition to the motion for preliminary injunction. Owner Defendants denied that they were illegally using their properties as bed and breakfast homes or transient vacation units. They asserted that they were in compliance with the LUO because they rent their properties for thirty days or more, even though the renters may not occupy the property for a full thirty days.

Defendants also filed motions to dismiss the complaint, in which they argued, among other things, that: (1) that the Circuit Court lacked subject matter jurisdiction over Count I because HRS § 46–4(a) does not grant the Pavseks a private right of action to sue to enforce the LUO; (2) the Circuit Court lacked subject matter jurisdiction over Count I under the doctrines of exhaustion of administrative remedies and primary jurisdiction; (3) the complaint should be dismissed for failure to name the City, which is an indispensable party as to Count I; (4) the nuisance counts (Counts II, III, and IV) are dependent on proof of the LUO violation alleged in Count I and fail to state a claim upon which relief can be granted; and (5) the breach of fiduciary duty counts (Counts V and VI) and the unjust enrichment count (Count VII) fail to state a claim upon which relief can be granted.

The Circuit Court held a consolidated hearing on the Pavseks' motion for preliminary injunction and Defendants' motions to dismiss. At the hearing, the Sandvolds' counsel argued that HRS § 46–4(a) did not establish a private right of action for the Pavseks to file suit to enforce the LUO, and that even if it did, the primary jurisdiction doctrine would require that the Pavseks first "go through the administrative process."

The Circuit Court orally granted Defendants' motions to dismiss. The Circuit Court stated that it found the arguments of the Sandvolds' counsel persuasive, and it indicated that it was dismissing Count I for lack of subject matter jurisdiction based on its interpretation of HRS § 46–4 and the doctrines of exhaustion of administrative remedies and

primary jurisdiction. The Circuit Court noted:

> And I think the scheme of things is that it's best for the county to enforce its zoning regulations or to look at its zoning regulations at least in the first instance rather than the parties coming to court.

As to Counts II, III, and IV, the Circuit Court stated:

> When I go to the other counts of the complaint, the nuisance count, the aiding and abetting a nuisance, I think that all of those are premised on or dependent upon the alleged violation of the zoning ordinance. The language in those counts talks about how the Defendants allegedly "illegally rented" their homes.
>
> So I think all of those counts are dependent on a finding that there is illegal rental going on. And because that needs to be decided by the administrative agency in the first instance, I think those counts would fail as well.

The Circuit Court also found as to Counts V and VI, that the Pavseks had not made a sufficient showing of the alleged breach of fiduciary duty. As to Count VII, the Circuit Court found that the Pavseks had not alleged that they conferred any benefit upon Defendants to support their unjust enrichment claim.

The Circuit Court subsequently issued a written "Order Granting Defendants' Motions to Dismiss as to All Claims and All Parties" (Dismissal Order). The Dismissal Order states that "[a]ll of Plaintiffs' claims as to all parties are ... dismissed with prejudice for the reasons stated in the [Defendants' motions to dismiss] and on the record in open court." On May 22, 2008, the Circuit Court entered a "Final Judgment" (Judgment) in favor of Defendants and against the Pavseks as to all claims raised in the Pavseks' complaint. This appeal followed.

### IV.

On appeal, the Pavseks argue that the Circuit Court erred in dismissing their complaint because: (1) the Pavseks have a private right of action under HRS § 46–4(a) to file suit to enjoin Defendants' alleged viola-

tion of the LUO as set forth in Count I; (2) the Pavseks' failure to join the City in their lawsuit did not justify dismissal of Count I; (3) the Pavseks' complaint stated a claim for nuisance; (4) the Pavseks' complaint stated a claim for breach of fiduciary duty; and (5) the Pavseks have a valid claim for unjust enrichment.

For the reasons discussed below, we conclude that: (1) with respect to Count I, the Pavseks have a private right of action under HRS § 46-4(a) to enforce Defendants' alleged LUO violation, but the Pavseks' enforcement action is subject to the doctrine of primary jurisdiction; (2) the Pavseks' failure to join the City did not provide a basis for dismissing Count I; (3) the Pavseks' nuisance claims (Counts II, III, and IV) were dependent on the alleged LUO violation and therefore also subject to the primary jurisdiction doctrine; and (4) the Pavseks' complaint failed to state a claim for breach of fiduciary duty (Counts V and VI) and unjust enrichment (Count VII). We vacate the Judgment with respect to the claims subject to the primary jurisdiction doctrine (Counts I, II, III, and IV), and we remand the case with instructions that the Circuit Court consider whether a stay or dismissal without prejudice of Counts I, II, III, and IV is the appropriate remedy under the primary jurisdiction doctrine. We affirm the Judgment with respect to Counts V, VI, and VII.

## DISCUSSION

### I.

### A.

The Pavseks rely on HRS § 46-4(a) as the basis for their entitlement to file suit to enforce the LUO. The Pavseks assert that HRS § 46-4(a) establishes a private right of action permitting them to seek judicial en-

forcement of the LUO, and therefore, the Circuit Court erred in dismissing their zoning enforcement claim for lack of subject matter jurisdiction.

We conclude that HRS § 46-4(a) establishes a private right of action to seek judicial enforcement of the LUO and accordingly, that the Circuit Court had subject matter jurisdiction over the Pavseks' zoning enforcement claim. However, we further conclude that the Circuit Court's exercise of jurisdiction is subject to the doctrine of primary jurisdiction. Under this doctrine, the Circuit Court was justified in requiring the Pavseks to first pursue an administrative determination of their claim that Defendants have been violating the LUO before proceeding with judicial enforcement of the LUO.[5]

### B.

We review a trial court's dismissal for lack of subject matter jurisdiction *de novo*. *Norris v. Hawaiian Airlines, Inc.*, 74 Haw. 235, 239, 842 P.2d 634, 637 (1992). Our review is

> based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 239–240, 842 P.2d at 637 (internal block quote format and citation omitted)

HRS § 46-4, entitled "County zoning," concerns the zoning power granted to the counties. HRS § 46-4(a) states that

> [z]oning in all counties shall be accomplished within the framework of a long-range, comprehensive general plan prepared or being prepared to guide the overall future development of the county. Zoning shall be one of the tools available to the

5. The Pavseks did not argue in the Circuit Court or on appeal that they have a private right of action pursuant to article XI, section 9 of the Hawai'i Constitution to enforce HRS § 46-4 or the LUO. Accordingly, we do not address that issue. We note that after this appeal was filed, the Hawai'i Supreme Court, in *County of Hawai'i v. Ala Loop Homeowners*, 123 Hawai'i 391, 235 P.3d 1103 (2010), held that article XI, section 9 of the Hawai'i Constitution created a private right of action to enforce HRS Chapter 205 in the circumstances of that case. *Id.* at 394, 235 P.3d at 1106. The court, however, specifically stated that it was not addressing whether the doctrines of primary jurisdiction or exhaustion of administrative remedies would be applicable to limit or restrict this private right of action. *Id.* at 418, 235 P.3d at 1130. Accordingly, *Ala Loop* does not control or conflict with our analysis in this case.

county to put the general plan into effect in an orderly manner.

HRS § 46–4(a) provides that the zoning power granted to the counties "shall be exercised by ordinance which may relate to" matters, including:

(2) The areas in which residential uses may be regulated or prohibited;

. . .

(4) The areas in which particular uses may be subjected to special restrictions; [and]

(5) The location of buildings and structures designed for specific uses and designation of uses for which buildings and structures may not be used or altered[.]

Of particular importance to this appeal, HRS § 46–4(a) provides:

The council of any county shall prescribe rules, regulations, and administrative procedures and provide personnel it finds necessary to enforce this section and any ordinance enacted in accordance with this section. *The ordinances may be enforced by appropriate fines and penalties, civil or criminal, or by court order at the suit of the county or the owner or owners of real estate directly affected by the ordinances.*

Any civil fine or penalty provided by ordinance under this section may be imposed by the district court, or by the zoning agency after an opportunity for a hearing pursuant to chapter 91. The proceeding shall not be a prerequisite for any injunctive relief ordered by the circuit court.

. . . .

The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole.

(Emphasis added.)

### C.

■ Defendants contend that HRS § 46–4(a) does not create a private right of action, but is simply an enabling statute that gives the City a range of enforcement options, including private enforcement, which the City may choose to select or reject. Defendants observe that the City has not chosen to enact an ordinance creating a private right of action to enforce the LUO, and therefore they argue that no such private right of action exists. The Pavseks counter that HRS § 46–4(a), by its plain language, creates a private right of action that entitles them to bring suit to enforce the LUO. We agree with the Pavseks that HRS § 46–4(a) creates a private right of action.

We apply the following principles when interpreting a statute:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Hawaii Gov't Emps. Ass'n, AFSCME Local 152, AFL–CIO v. Lingle,* 124 Hawai'i 197, 202, 239 P.3d 1, 6 (2010) (internal block quote format and citation omitted).

HRS § 46–4(a) provides that zoning ordinances enacted by the counties "may be enforced ... by court order at the suit of the county or the owner or owners of real estate directly affected by the ordinances." We conclude that the plain language of the' statute clearly manifests the Legislature's intent to create a private right of action for "directly affected" real estate owners to sue to

enforce zoning ordinances. Defendants do not cite to anything in the legislative history of HRS § 46–4(a) that supports their contention that the language at issue was merely intended by the Legislature to provide the counties with enforcement options that the counties could select or reject. We decline to adopt Defendants' interpretation, which relies on conjecture and hidden meaning that are not supported by the statute's legislative history. Instead, we adopt what we consider to be the most natural and straightforward reading of the statute and construe it as creating a private right of action.

As Defendants acknowledge, other states have enacted statutes which establish a private right of action to enforce zoning laws. *E.g.,* Minn.Stat. § 366.16 (authorizing any adjacent or neighboring property owner to institute any appropriate action to enforce zoning laws); Neb.Rev.Stat. § 23–114.05 (authorizing owners of real estate within the district affected by the regulations to institute any appropriate action to prevent or restrain the unlawful use of property); N.J. Stat. Ann. § 40:55D–18 (authorizing an interested party to institute any appropriate action to prevent or restrain the unlawful use of property). The enactment by other states of statutory private rights of action to enforce zoning laws supports our conclusion that the Hawai'i Legislature intended to do the same in enacting HRS § 46–4(a).

■ We reject Defendants' argument that the Pavseks lack standing to sue under HRS § 46–4(a). This argument is based on Defendants' contention that the phrase "the owner or owners of real estate directly affected by the ordinances" only permits suit by landowners "whose property had been the subject of a zoning ordinance and who wish[ ] to contest the applicability of that ordinance to [their] own property or petition for a change to the ordinance." Defendants' interpretation of HRS § 46–4(a) as only providing a private right of action to landowners who seek to *contest* zoning ordinances affecting their own property is inconsistent with the statute's specific authorization of actions to *enforce* zoning ordinances. We are not persuaded by the equivocal inferences Defendants attempt to draw from a provision dealing with the establishment of boundaries for forest and water reserve zones, which was enacted at the same time as HRS § 46–4, that the Legislature intended the term "enforce" to mean "contest" in enacting HRS § 46–4(a). We conclude that if the allegations of the Pavseks' complaint are taken as true, the Pavseks have standing as a "directly affected" owner to bring their lawsuit to enforce the LUO.

## II.

■ The conclusion that the Pavseks have a private right of action under HRS § 46–4(a) to seek enforcement of the LUO does not end our inquiry. Defendants argue on appeal, as they did in the Circuit Court, that even if "[HRS] § 46–4[ (a) ] authorizes a private right of action with original jurisdiction in the circuit court, the doctrine of primary jurisdiction mandates that the Director of the DPP, and then the ZBA [(Zoning Board of Appeals of the City and County of Honolulu)], be allowed to enforce the zoning [ordinance] before it can be considered by a court." We agree that the doctrine of primary jurisdiction applies to the Pavseks' claim for enforcement of the LUO.

In *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. 81, 734 P.2d 161 (1987), the Hawai'i Supreme Court explained the doctrine of primary jurisdiction and the related doctrine of exhaustion of administrative remedies:

Courts have "developed two principal doctrines to enable the question of timing of requests for judicial intervention in the administrative process to be answered: (1) primary jurisdiction; and (2) exhaustion of administrative remedies." B. Schwartz, *Administrative Law* § 8.23, at 485 (2d ed. 1984). "Both are essentially doctrines of comity between courts and agencies." *Id.* (footnote omitted).

" 'Primary jurisdiction' applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pac. R.R.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). When this happens, "the judicial

process is suspended pending referral of such issues to the administrative body for its views." *Id.* at 64, 77 S.Ct. at 165 (citation omitted). In effect, "the courts are divested of whatever original jurisdiction they would otherwise possess." B. Schwartz, *supra,* § 8.24, at 488 (emphasis omitted). And "even a seemingly contrary statutory provision will yield to the overriding policy promoted by the doctrine." *Id.*

"Exhaustion," on the other hand, comes into play "where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." *United States v. Western Pac. R.R.,* 352 U.S. at 63, 77 S.Ct. at 164. "The exhaustion principle asks simply that the avenues of relief nearest and simplest should be pursued first." *Moore v. City of East Cleveland,* 431 U.S. 494, 524, 97 S.Ct. 1932, 1948, 52 L.Ed.2d 531 (1977) (Burger, C.J., dissenting). "Judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process." B. Schwartz, *supra,* § 8.30, at 502.

*Kona Old,* 69 Haw. at 92–93, 734 P.2d at 168–69 (brackets and ellipsis points omitted).

 Thus, under the primary jurisdiction doctrine, a court has original subject matter jurisdiction over a claim, but "suspends" the judicial process so that issues pivotal to the claim's resolution can first be determined by an administrative body with responsibility for, and special competence in, deciding the issue. *Id.* In contrast, the exhaustion of administrative remedies doctrine applies in situations where the court lacks original subject matter jurisdiction over a claim, and the court can only exercise jurisdiction after the administrative process for resolving the claim has been completed. *Id.*

In *Kona Old,* the Hawaiʻi Supreme Court addressed the issue of whether HRS § 205A–6 [6] vested the circuit court with jurisdiction over an action brought by a private party to enforce agency compliance with the Costal Zone Management Act (CZMA), HRS Chapter 205A. HRS § 205A–6 authorizes "any person or agency [to] commence a civil action alleging that any agency" has breached or failed to comply with the CZMA in some respect. The supreme court acknowledged that the cause of action created by HRS § 205A–6 "seemingly describes a claim 'originally cognizable in the courts.'" *Kona Old,* 69 Haw. at 93, 734 P.2d at 169 (quoting *Western Pac. R.R.,* 352 U.S. at 64, 77 S.Ct. 161, a case applying the primary jurisdiction doctrine). Nevertheless, the supreme court required the plaintiff to first present the issues underlying its CZMA enforcement claim for resolution by the administrative agency with special competence to decide such issues, reasoning as follows:

[Plaintiff's] claim, however, involves the issuance of a special management area minor permit, and its enforcement "requires the resolution of issues which, under the regulatory scheme, have been placed within the special competence" of the county planning department. [*Western Pac. R.R.,* 352 U.S. at 64, 77 S.Ct. 161]. Thus, the request for judicial intervention in the administrative process should not have preceded the resolution by the Board of Appeals of the question of whether the planning director's action in issuing the minor permit was proper. For it is

6. HRS § 205A–6 (2001) currently provides, as it did when construed in *Kona Old,* in pertinent part as follows:

§ 205A–6 **Cause of action.** (a) Subject to chapters 661 and 662, any person or agency may commence a civil action alleging that any agency:

(1) Is not in compliance with one or more of the objectives, policies, and guidelines provided or authorized by this chapter within the special management area and the waters from the shoreline to the seaward limit of the State's jurisdiction; or

(2) Has failed to perform any act or duty required to be performed under this chapter; or

(3) In exercising any duty required to be performed under this chapter, has not complied with the provisions of this chapter.

. . . .

(c) A court, in any action brought under this section, shall have jurisdiction to provide any relief as may be appropriate, including a temporary restraining order or preliminary injunction.

now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by the legislature for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952).

*Kona Old,* 69 Haw. at 94, 734 P.2d at 169 (brackets omitted). Based on this reasoning, the supreme court affirmed the circuit court's dismissal of the plaintiff's complaint. *Id.*

We read *Kona Old* as applying the primary jurisdiction doctrine,[7] and we conclude that *Kona Old* controls our decision in this case. Here, similar to the situation in *Kona Old,* there is a statutory private right of action set forth in HRS § 46–4(a), which gives the Circuit Court original subject matter jurisdiction over the Pavseks' zoning enforcement claim. In addition, the rationale and justification articulated in *Kona Old* for invoking the primary jurisdiction doctrine fully applies to this case.

The adjudication of the Pavseks' zoning enforcement claim requires the resolution of whether Defendants violated the LUO. The Hawai'i Legislature has granted to the City the power to establish and enforce zoning laws, and the City, in turn, has placed determinations of zoning violations within the special competence of the Director of the DPP and the ZBA. *See* HRS § 46–4(a); Revised Charter of Honolulu (RCH) §§ 6–1501, 6–1503, 6–1516 (2000 ed. & Supp. 2003).[8] Thus, the Pavseks' zoning enforcement claim satisfies the conditions for applying the primary jurisdiction doctrine. *See Kona Old,* 69 Haw. at 92–94, 734 P.2d at 168–69; *Jou v. Nat'l Interstate Ins. Co. of Hawaii,* 114 Hawai'i 122, 128, 157 P.3d 561, 567 (App.2007). Furthermore, the policy of promoting uniformity and consistency in the regulatory process, which underlies the primary jurisdiction doctrine, would be served by applying the doctrine to the Pavseks' enforcement claim.

By requiring the Pavseks to first pursue resolution of their claim that Defendants have been violating the LUO with the Director of the DPP and the ZBA,

[u]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Kona Old,* 69 Haw. at 92–93, 734 P.2d at 168–69. Based on *Kona Old,* we conclude that the Pavseks were required to first present their claim regarding Defendants' alleged violation of the LUO to the Director of the DPP, and to appeal any adverse decision of the Director to the ZBA, before proceeding

---

7. In *Kona Old,* the supreme court did not specifically state that it was applying the primary jurisdiction doctrine. However, we infer from its analysis that it did. As noted, the supreme court acknowledged that the cause of action created by HRS § 205A–6 "seemingly describes a claim 'originally cognizable in the courts.'" *Kona Old,* 69 Haw. at 93, 734 P.2d at 169. The exhaustion of administrative remedies doctrine does not apply to claims originally cognizable in the courts.

8. The Director of the DPP is "charged with the administration and enforcement of the zoning ... ordinances[.]" RCH § 6–1503. The ZBA is responsible for "hear[ing] and determin[ing] appeals from the actions of the director in the administration of the zoning ordinances[.]" RCH § 6–1516 (footnote omitted). The ZBA is organizationally part of the DPP. RCH § 6–1501.

with their suit to obtain judicial enforcement of the LUO.

The DPP Rules of Practice and Procedure (DPP Rules) § 3–1 (1993) authorize "[a]ny interested person" to petition the Director of the DPP "for a declaratory ruling as to the applicability of any statute or ordinance relating to the [DPP]," which includes the LUO. The Director's decision on a declaratory ruling regarding the applicability of the LUO may be appealed to the ZBA. RCH § 6–1516; Rules of the Zoning Board of Appeals of the City and County of Honolulu (ZBA Rules) § 22–1 (1998). The Pavseks do not dispute that they did not petition the Director of the DPP for a declaratory ruling regarding the alleged LUO violations by Defendants. We conclude that under the primary jurisdiction doctrine, the Pavseks were required to first petition the Director of the DPP for a declaratory ruling on the alleged LUO violations, and appeal an adverse determination by the Director to the ZBA, before proceeding with their private right of action to enforce the LUO in the Circuit Court.

### III.

In addition to the primary jurisdiction doctrine, the Circuit Court appeared to rely upon the purported absence of a private right of action under HRS § 46–4(a) and the purported failure to exhaust administrative remedies in dismissing the Pavseks' zoning enforcement claim set forth in Count I. We have already concluded that the Pavseks have a private right of action under HRS § 46–4(a) to bring their zoning enforcement claim in the Circuit Court. Our conclusion means that the Pavseks' zoning enforcement claim was originally cognizable in the Circuit Court and therefore the doctrine of exhaustion of administrative remedies is inapplicable. *See Kona Old*, 69 Haw. at 93, 734 P.2d at 169. Accordingly, the Circuit Court could not justify its dismissal of the Pavseks' zoning enforcement claim on the absence of a private right of action under HRS § 46–4(a) or on the doctrine of exhaustion of administrative remedies.

### IV.

■ In their motions to dismiss, Defendants argued that the Pavseks' zoning enforcement claim should be dismissed on the alternative ground of their failure to join the City as an indispensable party. We conclude that the Circuit Court erred to the extent that it relied upon this ground in dismissing the Pavseks' zoning enforcement claim. Even assuming arguendo that the City qualifies as an indispensable party under Hawai'i Rules of Civil Procedure (HRCP) Rule 19 (2000), dismissal would only be an available remedy if the City "cannot be made a party[.]" HRCP Rule 19(b). There is no basis in the record to conclude that the City could not be joined as a party to the Pavseks' lawsuit. Accordingly, the fact that the City had not yet been made a party did not provide a basis for dismissing the Pavseks' zoning enforcement claim. *See id.; UFJ Bank Ltd. v. Ieda*, 109 Hawai'i 137, 142–43, 123 P.3d 1232, 1237–38 (2005); *Life of the Land v. Land Use Comm'n*, 58 Haw. 292, 298, 568 P.2d 1189, 1194 (1977).

### V.

■ In its oral ruling on Defendants' motions to dismiss, the Circuit Court appeared to apply the doctrine of primary jurisdiction in dismissing the Pavseks' nuisance claims, Counts II, III, and IV. We conclude that the doctrine of primary jurisdiction applies to the Pavseks' nuisance claims. This is because the Pavseks' nuisance claims are predicated on Defendants' alleged violation of the LUO through illegal rentals. In Count II for nuisance against Owner Defendants, the Pavseks alleged that the actions of Owner Defendants "in allowing their properties to be used for illegal rentals" constituted a nuisance. Counts III and IV alleged that various Defendants conspired to create, or aided and abetted other Defendants in creating, the nuisance attributable to the alleged illegal rentals.

We agree with the Circuit Court's assessment that the Pavseks' nuisance claims "are dependent on a finding that there is illegal rental going on" which "needs to be decided by the administrative agency in the first instance[.]" Because the basis for the

Pavseks' nuisance claims are Defendants' alleged "illegal rentals," a determination of whether Defendants have been violating the LUO is a necessary predicate to deciding the nuisance claims. Accordingly, the primary jurisdiction doctrine applies to the nuisance counts.[9]

## VI.

Where the doctrine of primary jurisdiction applies, the court has the "discretion either to retain jurisdiction [and stay the proceedings] or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter v. Cooper,* 507 U.S. 258, 269–69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *see Jou,* 114 Hawai'i at 128, 157 P.3d at 567 (stating that when primary jurisdiction applies, "the court may stay the proceedings while an administrative agency decides predicate issues necessary to adjudicate ... [the] claim"); *Fratinardo v. Emps.' Ret. Sys.,* 121 Hawai'i 462, 468–69, 220 P.3d 1043, 1049–50 (App.2009).

In *Jou,* we held that

[s]taying the proceedings conserves scarce judicial resources by allowing an administrative agency with expertise to decide the predicate issues. The agency's resolution of the predicate issues may reveal that there is no basis for ... [the] claim or may satisfy the plaintiff and obviate his or her need to further pursue the ... claim....

A trial court has discretion in fashioning an appropriate remedy when applying the primary jurisdiction doctrine. As an alternative to staying the proceedings pending administrative resolution of predicate issues, the court has the discretion to dismiss the case without prejudice. However, dismissal is an appropriate remedy only *"if the parties would not be unfairly disadvantaged."*

*Jou,* 114 Hawai'i at 128–29, 157 P.3d at 567–68 (citation omitted; emphasis added).

Based on the record, we are unable to determine whether the Circuit Court considered whether any "unfair disadvantage" would result from the dismissal of the Pavseks' zoning enforcement and nuisance claims, Counts I, II, III, and IV. The Circuit Court also dismissed these counts *with prejudice,* a remedy that is not generally applicable under the primary jurisdiction doctrine. *See Reiter,* 507 U.S. at 268–69, 113 S.Ct. 1213; *Jou,* 114 Hawai'i at 128–29, 157 P.3d at 567–68; *Flo–Sun, Inc. v. Kirk,* 783 So.2d 1029, 1041 (Fla.2001) (concluding that dismissal with prejudice was improper when primary jurisdiction applies). Accordingly, we vacate the portions of the Judgment that dismissed Counts I, II, III, and IV with prejudice, and we remand the case with instructions that the Circuit Court consider whether a stay or dismissal without prejudice is appropriate as to these counts.

## VII.

The Pavseks argue that the Circuit Court erred in dismissing, pursuant to HRCP Rule 12(b)(6), Count V, which alleged that the Sandvolds had breached their fiduciary duties as co-tenants in a private right of way, and Count VI, which alleged that HBH had aided and abetted the Sandvolds' breach of their fiduciary duties.

We review *de novo* a trial court's ruling on a motion to dismiss under HRCP Rule 12(b)(6) for failure to state a claim. *Wright v. Home Depot U.S.A., Inc.,* 111 Hawai'i 401, 406, 142 P.3d 265, 270 (2006). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *In re Estate of Rogers,* 103 Hawai'i 275, 280, 81

---

9. Based on the Circuit Court's oral ruling on Defendants' motions to dismiss, we do not believe that the Circuit Court relied upon HRCP Rule 12(b)(6) (2000) in dismissing the Pavseks' nuisance counts. Thus, we decline to address whether these claims are subject to dismissal under HRCP Rule 12(b)(6). We note that the Circuit Court will be in a better position to evaluate whether the nuisance counts state valid claims for relief under HRCP Rule 12(b)(6), by virtue of the application of the primary jurisdiction doctrine, after it receives the benefit of an administrative determination of the issue of whether Defendants have been violating the LUO.

P.3d 1190, 1195 (2003) (block quote format and citation omitted). "[O]ur consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true." *Id.* at 281, 81 P.3d at 1196 (block quote format and citation omitted).

■■■■ "However, in weighing the allegations of the complaint as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged." *Marsland v. Pang,* 5 Haw.App. 463, 474, 701 P.2d 175, 186 (1985).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (construing federal rule that is analogous to HRCP Rule 12(b)(6)) (citation and footnote omitted). We conclude that the Pavseks failed to state a sufficient claim for relief in Counts V and VI.

■■■■ The Supreme Court of the Territory of Hawai'i in *De Mello v. De Mello,* 24 Haw. 675, 676 (Haw.Terr.1919), stated that

> since the possession of one joint tenant, or tenant in common, is the possession of all, and all are equally-entitled to the use and enjoyment of the property, it follows as a general rule that one tenant cannot maintain an action at law against his cotenant in respect of the common property unless he has been disseized or ousted therefrom.

Where the commonly-owned property is a private right of way, such as a privately-owned roadway, one co-owner may use the property "to its fullest extent as a roadway so long as he [or she] does not interfere with his [or her] co-tenant's use of the roadway for the same purposes" and the co-owner's use "does not result in disseisen or ouster" of the other co-tenants. *Hewitt v. Waikiki*

*Shopping Plaza,* 6 Haw.App. 387, 395, 722 P.2d 1055, 1061 (1986).

Here, the Pavseks allege in their complaint that the Sandvolds have "overburden[ed] the private right of way [in which the Pavseks and Sandvolds are joint owners] through the increased traffic and use associated with [the Sandvolds'] illegal rentals." The bare and conclusory allegation that the right of way was "overburdened" is insufficient to raise a right to relief above the speculative level. The Pavseks do not allege that the increased traffic related to the Sandvolds' rentals interfered with, prevented, or ousted the Pavseks from using the right of way for its intended purpose. We conclude that the Circuit Court properly dismissed Count V for failure to state a claim. Count VI, which alleged that HBH aided and abetted the Sandvolds in the breach of their fiduciary duties, was dependent upon Count V and was therefore also properly dismissed for failure to state a claim.

### VIII.

■■■ The Pavseks argue that the Circuit Court erred in dismissing Count VII for unjust enrichment, which was asserted against all Defendants, for failure to state a claim.

■■■ To prove unjust enrichment, a plaintiff must show that "he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." *Porter v. Hu,* 116 Hawai'i 42, 55, 169 P.3d 994, 1007 (App.2007) (internal quotation marks and citation omitted). The allegations in Count VII of the Pavseks' complaint are insufficient to support a valid claim that they conferred a benefit upon Defendants. Accordingly, we conclude that Count VII failed to state a claim for relief and that the Circuit Court properly dismissed Count VII.

### CONCLUSION

For the foregoing reasons, we: (1) vacate the portions of the Circuit Court's Judgment dismissing Counts I, II, III, and IV of the complaint with prejudice; (2) affirm the portions of the Judgment dismissing Counts V, VI, and VII of the complaint with prejudice;

and (3) remand the case to the Circuit Court with instructions to consider whether a stay or dismissal without prejudice of Counts I, II, III, and IV would be an appropriate remedy under the primary jurisdiction doctrine and for further proceedings consistent with this Opinion.