**\*\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-16-0000444
12-SEP-2025
01:39 PM
Dkt. 74 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

MAUI LANI NEIGHBORS, INC., a Hawaiʻi Nonprofit Corporation,
Petitioner/Plaintiff-Appellant,

vs.

STATE OF HAWAIʻI; STATE OF HAWAIʻI DEPARTMENT OF LAND AND NATURAL
RESOURCES; STATE OF HAWAIʻI BOARD OF LAND AND NATURAL RESOURCES;
DAWN N.S. CHANG, in her official capacity as chair of the State
of Hawaiʻi Board of Land and Natural Resources; COUNTY OF MAUI;
COUNTY OF MAUI PLANNING COMMISSION; COUNTY OF MAUI DEPARTMENT OF
PLANNING; and KATE L.K. BLYSTONE, in her official capacity as
County of Maui Planning Director,
Respondents/Defendants-Appellees.

SCWC-16-0000444

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000444; CASE NO. 2CC141000501)

SEPTEMBER 12, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND DEVENS, JJ.,
AND CIRCUIT JUDGE CASTAGNETTI IN PLACE OF GINOZA, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.    INTRODUCTION

This case requires us to consider how the neighbors of a proposed public sports park could assert zoning and environmental challenges to the project.  Some of those neighbors attended a County of Maui Planning Commission (Planning Commission) meeting at which the Planning Commission approved a special use permit that allowed the project to move forward.  Rather than appeal that decision within the applicable deadlines, the neighbors formed a non-profit member corporation called Maui Lani Neighbors, Inc. (MLN) to challenge the project directly in the Circuit Court of the Second Circuit (circuit court).  The circuit court ruled that the neighbors had missed the boat: they should have brought their challenges as an appeal of the Planning Commission's decision to grant the permit.  The circuit court eventually dismissed the lawsuit, and the Intermediate Court of Appeals (ICA) affirmed.

With one exception, we reach the same result as the ICA, although our reasoning differs on some points.  The neighbors are seeking relief under our declaratory judgment statute, Hawai'i Revised Statutes (HRS) § 632-1 (2016).  That statute contains a limitation that states "[w]here . . . a statute provides a special form of remedy for a specific type of

2

case, that statutory remedy shall be followed."  HRS § 632-1(b).

Here, there is such a remedy: the right to appeal from the

Commission's ruling granting the permit under HRS § 91-14

(2012).  The lone exception relates to the neighbors' claims

that environmental review of the project was insufficient under

HRS chapter 343, the Hawai'i Environmental Policy Act (HEPA).

Unlike their other claims, the neighbors were not required to

assert that claim in an HRS chapter 91 appeal.  Rather, HRS

§ 343-7 (Supp. 2014) provided the circuit court with original

jurisdiction to consider that claim in the first instance.

Thus, the circuit court and the ICA erred in dismissing it.

The neighbors also assert that article XI, section 9

of the Hawai'i Constitution empowered the circuit court to

exercise jurisdiction over several of their claims in the first

instance, and particularly, those arising under HRS chapters 46,

205, and 343.  Article XI, section 9 establishes the right to a

clean and healthful environment.  In County of Hawai'i v. Ala

Loop Homeowners, 123 Hawai'i 391, 235 P.3d 1103 (2010), this

court for the first time recognized that the public can enforce

that right, "subject to reasonable limitations and regulation as

provided by law."

In the circumstances of this case, we hold that the

jurisdictional limitation within HRS § 632-1 was a reasonable

limitation established by law, and that accordingly, the neighbors were required to assert their claims arising under HRS chapters 46 and 205 through an appeal of the Planning Commission's decision. In contrast, to the extent that neighbors seek to assert their HRS chapter 343 claims in circuit court pursuant to article XI, section 9, they may do so given the statutory grant of jurisdiction reflected in HRS § 343-7.

It has been fifteen years since this court decided <u>Ala Loop</u>, which established that article XI, section 9 means what it says: Hawaiʻi's people have the right to a clean and healthful environment, and they have the power to enforce that right. Our holding in <u>Ala Loop</u> provided relief under article XI, section 9, where it was previously unavailable elsewhere.

Our decision today reaffirms the framework for protecting our environment established by article XI, section 9. It acknowledges that the task of defining the substance of the right to a clean and healthful environment is entrusted in the first instance to the legislature. And it recognizes that enforcement of that right should complement, rather than supplant, other existing tools for protecting our environment, with the important caveat that those tools cannot impose unreasonable burdens on those who seek to use them. In the circumstances of this case, the neighbors have failed to show

that it is unreasonable to require them to avail themselves of the protections provided by an appeal from the Planning Commission's decision.

Accordingly, we affirm the judgment of the ICA except to the extent that it restricts MLN's ability to assert its rights under HRS chapter 343.

## II.    BACKGROUND

### A.    The Special Use Permit

The dispute in this case arises from the Planning Commission's approval of a county special use permit (CUP) allowing the State of Hawaiʻi Department of Land and Natural Resources (DLNR) to develop the Central Maui Regional Sports Complex (Sports Park).  The following recitation of facts is based on express findings made by the circuit court, which are unchallenged on certiorari.[1]

DLNR's planned Sports Park would include playing fields for general public use on a 65-acre parcel of land (the Property) acquired by the DLNR from intervenor Alexander & Baldwin, LLC (A&B).  The subject land was zoned agricultural under county zoning and was redistricted to the State Urban Land

---

[1]    As noted in the ICA opinion, MLN did briefly assert in its opening brief that the circuit court erred in entering certain findings of fact regarding the application of the futility exception to the doctrine of exhaustion.  However, MLN failed to provide any argument as to why those specific findings were erroneous and, thus, the ICA concluded that any purported challenge to those findings had been waived.  MLN does not dispute the ICA's conclusion or renew its challenge to those findings on certiorari.

Use District pursuant to a June 21, 2012 State Land Use Commission (LUC) Decision and Order (LUC D&O).

DLNR prepared a final environmental assessment (FEA) for the Sports Park, which resulted in a finding of no significant impact.  No appeal of the environmental review was filed, and State of Hawaiʻi Board of Land and Natural Resources (BLNR) accepted the document as final on October 11, 2013.

On October 10, 2013, DLNR applied to the County of Maui for a CUP to develop the Sports Park.  Twice, on October 9, 2013, and on November 14, 2013, DLNR sent notice of its application to surrounding property owners but, on both occasions, failed to send notice to all owners and lessees of record located within a five-hundred-foot distance from the Property.  In January 2014, the Planning Commission scheduled DLNR's CUP application for a public hearing on February 11, 2014.  However, after DLNR again failed to send notice to all owners and lessees of record located within a five-hundred-foot distance from the Property, the Planning Commission rescheduled the hearing for March 25, 2014.

On February 12, 2014, DLNR once again mailed notice of the hearing, this time to all owners and lessees of record located within a five-hundred-foot distance from the Property. The notice "identified the CUP Application, the Property, the

6

right to intervene, where and how to submit written testimony, and the hearing date, time, and place." Numerous individuals who would later become members of MLN received actual notice of the CUP hearing, including: president David Potter; vice-president Dr. Harley Manner; treasurer Holden Gannon; former president and current director Tina Hoenig; and members Mark Hoenig, Neal Sorensen, and Dr. Mary Spencer. In addition to the mailed notice, DLNR also published notice of the CUP hearing in a local newspaper once a week for three consecutive weeks prior to the hearing date.

On March 25, 2014, several future officers and members of MLN attended the Planning Commission's hearing on DLNR's CUP application. DLNR was the sole party to the proceeding. At least one future member, Tina Hoenig, testified at the hearing, but at no point prior to or during the March 25, 2014 proceedings did any of MLN's future members petition to intervene. The Planning Commission voted unanimously to approve the CUP. At the conclusion of the hearing, the Planning Commission publicly announced that it had approved the CUP with the additional condition that "prior to initiation of construction, the [DLNR] shall meet with the adjacent community members to discuss [their] concerns." Both Dr. Spencer and Dr. Manner testified before the circuit court that they had heard the Planning Commission's decision.

7

On April 29, 2014, DLNR held a public meeting for community members to express their concerns regarding the Sports Park development. Dr. Spencer, Dr. Manner, and Mr. Gannon all attended the meeting, and Dr. Manner later testified that he left the meeting believing the Sports Park was a "done deal."

On May 12, 2014, future MLN president Tina Hoenig filed a HRS § 91-14 appeal challenging the CUP in circuit court. On June 12, 2014, MLN was incorporated as a non-profit member corporation with the "express corporate purpose of supporting, promoting, and advocating for sustainable and appropriate community planning, and legal state and county zoning consistent therewith, for the Central Maui region of the Island of Maui." On June 20, 2014, Tina Hoenig and defendant County of Maui stipulated to dismiss the appeal without prejudice. MLN did not call Tina Hoenig as a witness in the present case and there is no evidence in the record explaining her reasons for agreeing to the dismissal.

On July 12, 2014, MLN sent a cease-and-desist letter to DLNR regarding the Sports Park. In its letter, MLN acknowledged that the Planning Commission had granted DLNR a CUP for the Sports Park on March 25, 2014.

**B.   Circuit Court Proceedings[2]**

On September 2, 2014, MLN filed a suit in circuit court seeking declaratory, injunctive, and other relief related to the Planning Commission's March 25, 2014 approval of a CUP authorizing DLNR's proposed development of the Sports Park. Named as defendants in the suit were the State of Hawai'i, DLNR, BLNR, and the BLNR Chairperson (collectively, the State), as well as the County of Maui, the Planning Commission, the County of Maui Planning Department (Planning Department), and the County of Maui Department of Planning (Planning Director) (collectively, the County).

On September 9, 2014, MLN filed its First Amended Verified Complaint (Complaint), in which it asserted nine counts. Count I alleged numerous violations of zoning under HRS § 46-4 (Supp. 2014), including: I.B., inconsistency with the Wailuku-Kahului Community Plan; I.C., inconsistency with the Maui Island Plan; I.D., violation of the Maui County Code (MCC) Chapter 19.30A, which governs the agricultural district; I.E., violation of the special use permit ordinance, MCC § 19.510.070 (2013); and I.F., violation of the June 21, 2012 LUC D&O redesignating the subject property from State Agricultural Land Use District to State Urban Land Use District.

---

[2]    The Honorable Peter T. Cahill presided.

The Complaint also asserted: Count II, declaratory relief that the CUP is void as a matter of law; Count III, the special use ordinance is unconstitutionally vague and ambiguous; Count IV, declaratory relief with respect to lot size requirements within the regional park district; Count V, violations of HEPA; Count VI, violation of article XI, section 9 of the Hawai'i Constitution; Count VII, public nuisance; Count VIII, violation of due process; and Count IX, declaratory and other relief that notice to surrounding neighbors was inadequate.

MLN asserted that the circuit court had jurisdiction to adjudicate its claims under: HRS § 46-4, county zoning; HRS chapter 343, HEPA; HRS chapter 632, declaratory judgments; and the Hawai'i Constitution.

On September 22, 2014, the County moved to dismiss Counts I.D., I.F., II, III, and IV of MLN's Complaint under Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6) (eff. 2000) for failure to state a claim. The State joined the motion. On October 6, 2014, with the County's motion still pending before the circuit court, MLN filed a petition with the LUC seeking a declaratory ruling that the proposed Sports Park uses violated conditions of the June 21, 2012 LUC D&O. After being made aware of MLN's petition to the LUC, the circuit court denied in part

10

the County's Rule 12(b)(6) motion to the extent it sought dismissal of Count I.F. of the Complaint and further stayed all proceedings pending a determination by the LUC "as to any potential violation by any person or party of the [June 21, 2012 LUC D&O]."

At a public meeting on November 20, 2014, the LUC voted to deny MLN's petition for declaratory relief.[3]  On November 25, 2014, the circuit court lifted the stay and subsequently denied the County's motion to dismiss as to all counts.

On December 5, 2014, the State filed its own motion for partial dismissal, which the County and intervenor A&B later joined.[4]  The State argued that Counts II, III, and V were time-barred and should be dismissed with prejudice.  The circuit court scheduled a hearing on the State's motion for partial dismissal and requested supplemental briefing on the issues of subject matter jurisdiction and collateral estoppel.  The State, the County, and A&B each submitted supplemental briefing.

---

[3]     In denying MLN's petition, the LUC cited to Hawaiʻi Administrative Rules (HAR) § 15-15-100(a)(1)(C) (eff. 2013), which provided that the LUC shall deny a petition for declaratory order where "[t]he issuance of the declaratory order may adversely affect the interest of the State . . . in any litigation which is pending or may be reasonably be [sic] expected to arise." The LUC entered its written order denying the petition on December 3, 2014.

[4]     A&B moved to intervene on December 9, 2014.  The circuit court granted the motion on December 17, 2014.

On December 22 and 23, 2014, the circuit court held evidentiary hearings on the State's motion for partial dismissal. The court received evidence and heard testimony from MLN member Mary Spencer, PhD, MLN treasurer Holden Gannon, MLN vice president Harley Manner, PhD, DLNR engineer Carty Chang, Planning Department senior planner Paul Fasi, and Planning Director William Spence. At the conclusion of the December 23, 2014 hearing, the circuit court requested supplemental briefing regarding MLN's failure to challenge the Planning Commission's approval of the CUP through an administrative appeal and whether such an appeal would have been futile in light our recent opinion in Kellberg v. Yuen, 131 Hawai'i 513, 319 P.3d 432 (2014).

On December 31, 2014, after review of the parties supplemental briefing and further hearing, the circuit court granted the State's motion for partial dismissal. With the exception of Count VII, public nuisance, the circuit court dismissed all counts in the Complaint for lack of subject matter jurisdiction.

On February 23, 2015, the circuit court entered its written findings of fact, conclusions of law, and order granting the State's motion for partial dismissal.

Addressing the issue of subject matter jurisdiction, the circuit court concluded that MLN was subject to the notice received by its members, who, the court concluded, had "received notice [of the CUP proceedings] in time to exhaust the administrative remedies of intervention and an HRS § 91-14 appeal."[5] Because the circuit court also concluded that MLN's Counts I, II, III, IV, V, VI, VIII, and IX "could have been addressed before the Planning Commission on intervention and on appeal under HRS chapter 91," it further concluded that those claims were barred based on MLN's failure to exhaust administrative remedies. (Emphasis added.) Accordingly, the circuit court dismissed each of the aforementioned counts with prejudice, leaving only Count VII, public nuisance, pending.

On September 10, 2015, on a motion from MLN, the circuit court dismissed Count VII without prejudice. Subsequently, on May 19, 2016, the circuit court entered final judgment in favor of the State, the County, and A&B. MLN timely appealed.

---

[5] Given the evidence of notice and MLN's actions subsequent to the March 25, 2014 hearing, the circuit court found that MLN "knew no later than July 12, 2014 that the Commission had granted a [CUP] for the Sports Park."

13

C.    ICA Proceedings

1.    MLN's appeal to the ICA

MLN raised three points of error before the ICA, of which two remain relevant to this appeal.[6]  First, MLN asserted that "the trial court erred by applying the doctrine of exhaustion where the Planning Commission did not have exclusive original jurisdiction over any of MLN's claims."  Second, MLN contended that "even if the doctrine of exhaustion were to apply in this case, the trial court erred in ruling the futility exception had not been met."

On its first asserted point of error, MLN argued that, under Hawai'i law, "the doctrine of exhaustion is applied only where the agency has exclusive original jurisdiction, meaning that the trial court in that instance has no original jurisdiction."  (Emphases omitted.)  MLN then presented arguments as to why the circuit court had original jurisdiction over each of the claims asserted in the Complaint and, thus, why exhaustion did not apply.

_____

[6]    As a third point of error, MLN also asserted to the ICA that the circuit court erred by temporarily staying proceedings and referring Count I.F. to the LUC under the doctrine of primary jurisdiction.  The ICA held that this issue was moot given the short duration of the stay and the circuit court's ultimate dismissal of Count I.F. for failure to exhaust administrative remedies.  Maui Lani Neighbors v. State, 153 Hawai'i 527, 563-64, 542 P.3d 1222, 1258-59 (App. 2023).  MLN does not challenge the ICA's mootness holding on certiorari and, thus, we do not address the issue in this opinion.

14

As to Count I, violations of zoning under HRS § 46-4, MLN cited Pavsek v. Sandvold, 127 Hawaiʻi 390, 397-98, 279 P.3d 55, 62-63 (App. 2012), to argue that, because MLN members were real estate owners directly affected by the Sports Park uses, MLN had a private right of action to sue to enforce zoning ordinances under HRS § 46-4(a).

MLN next argued that the circuit court had original jurisdiction over MLN's constitutional claims. These claims included Counts II, III and VIII, which MLN characterized as constitutional due process claims under article I, section 5 of the Hawaiʻi Constitution, and Count VI, which alleged violations of the constitutional right to a clean and healthful environment under article XI, section 9. Specifically, in Count III, MLN alleged that due process was violated because the special use ordinance, MCC § 19.30A.060 (2013), was "unconstitutionally vague and ambiguous." As to Counts II and VIII, MLN alleged that the "expedited special use process" that was utilized to approve DLNR's Sports Park uses deprived MLN members of due process to the extent that the CUP "effectuate[d] what [was] essentially an illegal rezoning." Further, as to Count VI, MLN argued, under Ala Loop, that article XI, section 9 of the Hawaiʻi Constitution provided the circuit court with original

15

jurisdiction "to hear claims brought to enforce 'environmental quality laws,' such as HRS, chapters 46 and 343."

As to Count V, violations of HEPA, HRS chapter 343, MLN argued that the circuit court had original jurisdiction over those claims pursuant to HRS § 343-7. Further, given the express right of action provided under that statute, MLN argued that the Planning Commission would not have exclusive original jurisdiction over a HEPA challenge under any circumstances.

Finally, MLN argued that the circuit court also had original jurisdiction to adjudicate MLN's claims for declaratory relief, Counts II, IV, and IX, under HRS § 632-1.

Regarding its second asserted point of error, MLN argued that even if the doctrine of exhaustion were to apply in this case, the circuit court should have retained jurisdiction over MLN's claims under the futility exception as articulated in Kellberg. See 131 Hawai'i at 531, 319 P.3d at 450 ("[W]henever exhaustion of administrative remedies will be futile it is not required.") (quoting Poe v. Haw. Labor Rels. Bd., 97 Hawai'i 528, 536, 40 P.3d 930, 938 (2002)). As expressed by MLN, the futility exception applies in cases where the administrative process is unable to provide appropriate relief, or where a lack of appropriate notice results in a party being time-barred from

16

appealing an administrative decision.  See id. at 531-32, 319 P.3d at 450-51.

As applied to the claims asserted in the Complaint, MLN argued that the exhaustion of administrative remedies would have been futile under either theory.  First, MLN contended that "the Planning Commission would have been powerless to adjudicate any of MLN's claims," and thus provide appropriate relief, because "the Planning Commission's authority is expressly limited to reviewing the eight criteria set forth in the [CUP ordinance, MCC § 19.510.070(B)]."  (Emphasis omitted.)  Further, MLN argued that its future members did not receive adequate notice of the CUP proceedings.

In conclusion, MLN requested, inter alia, that the ICA reverse the circuit court's final judgment and relevant orders, direct the circuit court to exercise jurisdiction over all of MLN's claims, and deem the CUP null and void as a matter of law. The State and A&B each filed an answering brief addressing MLN's arguments and requesting that the circuit court's judgment be affirmed.

## 2.  ICA opinion

In December 2023, the ICA issued its opinion affirming in part and reversing in part.  Maui Lani Neighbors v. State, 153 Hawaiʻi 527, 542 P.3d 1222 (App. 2023).  Broadly, the ICA held that the circuit court lacked jurisdiction over MLN's

17

claims to the extent that the asserted claims sought to invalidate the CUP.  See id. at 534, 542 P.3d at 1229.  This included all claims in Counts I, II, III, IV, VIII, and IX, which the ICA concluded "were properly dismissed for failure to exhaust administrative remedies, but for reasons different than the [c]ircuit [c]ourt."  Id.  With respect to Counts V and VI, the ICA remanded to the circuit court to address the claims alleged in those counts only "to the extent [those claims] seek relief other than to invalidate the CUP."  Id.

In articulating the standard for the doctrine of exhaustion of administrative remedies, the ICA clarified that the correct inquiry is not merely whether a claim could have been raised in the administrative process.  Id. at 539-40, 542 P.3d at 1234-35.  Rather, exhaustion applies only where an agency has exclusive original jurisdiction to resolve the claim. Id. at 540, 542 P.3d at 1235.  Put differently, the doctrine of exhaustion of administrative remedies "provides that where a claim is cognizable in the first instance by an administrative agency alone, judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process."  Id. (quoting Kellberg, 131 Hawai'i at 527, 319 P.3d at 446).  Further, "[i]n order for the exhaustion of administrative

remedies to apply, 'the statute, ordinance or regulation under which the agency exercises its power must establish clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties.'" Id. at 541, 542 P.3d at 1236 (quoting Kellberg, 131 Hawai'i at 536, 319 P.3d at 455). Reviewing the relevant statutes, ordinances, and rules, the ICA concluded "that such 'clearly defined machinery' was in place related to the issuance of the CUP in this case." Id.

Addressing each count in the Complaint, the ICA held that Counts I, II, III, IV, VIII, and IX were barred for failure to exhaust administrative remedies. Beginning with Count I, violation of zoning, the ICA rejected MLN's argument that under Pavsek, 127 Hawai'i 390, 279 P.3d 55, HRS § 46-4(a) provided the circuit court with concurrent jurisdiction to adjudicate MLN's zoning claims. The ICA disposed of MLN's argument as follows:

> Reading the relevant provisions of HRS § 46-4 in pari materia, and under the circumstances in this case, we construe the legislative intent as requiring the administrative review process and appeal from the administrative process as the exclusive route for obtaining court review of the activity permitted under the CUP. Pavsek is distinguishable because in that case the plaintiffs challenged conduct that had not been permitted under any administrative process.
>
> Accordingly, the exhaustion of administrative remedies doctrine applied to MLN's claims under HRS § 46-4 in Count I, and MLN failed to exhaust its administrative remedies.

Maui Lani Neighbors, 153 Hawai'i at 547, 542 P.3d at 1242 (emphasis and italics omitted).

19

As to MLN's claims for declaratory relief under Counts II and IV, the ICA held that those claims were barred by the limitation under HRS § 632-1(b) that "[w]here . . . a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed." Id. (emphasis omitted). Applying this court's holding in Punohu v. Sunn, 66 Haw. 485, 487, 666 P.2d 1133, 1135 (1983), that "the remedy of appeal provided by § 91-14, HRS, is a statutorily provided special form of remedy," the ICA held that "[t]he failure of MLN members to intervene in the Planning Commission proceeding and appeal from the issuance of the CUP under HRS § 91-14 precludes declaratory relief under HRS § 632-1." Maui Lani Neighbors, 153 Hawai'i at 548, 542 P.3d at 1243.

The ICA next addressed MLN's due process claims asserted under Counts III and VIII. "As a general matter," the ICA first expressed that "claims based on constitutional rights are subject to the exhaustion of administrative remedies doctrine, unless an exception applies." Id. at 549, 542 P.3d at 1244 (citing Kellberg, 131 Hawai'i at 519, 531, 319 P.3d at 438, 450). Applied here, the ICA held that the CUP process and right to appeal "provided an adequate remedy to address MLN's claims in Count III and Count VIII." Id. at 550, 542 P.3d at 1245. Further, and in response to MLN's argument that its

20

constitutional due process claims were outside of the Planning Commission's jurisdiction, the ICA determined that Counts III and VIII presented "claims challenging the validity of the CUP," which were based on the substance of the Planning Commission's decision and, thus, were subject to the "established regulatory process for MLN members to intervene in the Planning Commission proceeding and to seek judicial review by appealing under HRS § 91-14." Id. at 551, 542 P.3d at 1246. Accordingly, the ICA held that circuit court did not err in dismissing Counts III and VIII for failure to exhaust administrative remedies. Id.

With respect to Count IX, the ICA credited the circuit court's uncontested findings and conclusion that "MLN members and officers had notice that the Sports Park would be addressed through a special use permit . . . but failed to intervene in the CUP process or to maintain an appeal from the Planning Commission's decision to issue the CUP." Id. at 553, 542 P.3d at 1248. Thus, the ICA concluded, "[t]he [c]ircuit [c]ourt did not err in dismissing Count IX." Id.

The ICA also rejected MLN's argument that the exhaustion of administrative remedies would have been futile under the circumstances of this case. Id. The ICA stated:

> The assertion that MLN was provided inadequate notice has been addressed above and we reject that argument. With regard to MLN's further argument, MLN fails to show that the Planning Commission could not consider whether the CUP application should have been denied in favor of seeking a change in zoning. Indeed, MCC § 19.510.070(A), which the

21

> Planning Commission was required to follow, provides that "[a] special use permit shall comply with the provisions of this section and with the policies and objectives of the general plan and community plans of the county, the Hawaiʻi Revised Statutes, and the revised charter of the county." Further, under MCC § 19.510.070(B), the Planning Commission was required to find that eight criteria were met before approving the CUP, including that "[t]he proposed request meets the intent and purpose of the applicable district[.]" MCC § 19.510.070(B)(3) (emphasis added). The Planning Commission was thus required to find that the Sports Park met the intent and purpose of the County's agricultural zoning district for the property.
>
> Moreover, if an appeal had been asserted or maintained from the CUP approval, MLN could have sought judicial review pursuant to HRS § 91-14 and challenged whether the Planning Commission's decision was, *inter alia*, "[i]n excess of the statutory authority or jurisdiction of the agency" or "[a]ffected by other error of law[.]" HRS § 91-14(g).

Id. (brackets in original) (footnote omitted).

With regard to MLN's HEPA claims under Count V, the ICA first expressed that the "primary focus" of MLN's Complaint was "to seek declaratory and injunctive relief related to the CUP." Id. at 554, 542 P.3d at 1249. The ICA then concluded that, "to the extent the Count V claims constitute a challenge to the validity of the CUP, the claims were properly dismissed for failure to exhaust administrative remedies." Id. (emphasis omitted). However, "[g]iven the allegations in the . . . Complaint and MLN's arguments on appeal," the ICA concluded that, "to the extent MLN's Count V claims seek relief other than invalidating the CUP, . . . dismissal of such claims on grounds that MLN failed to exhaust administrative remedies was improper." Id. at 555, 542 P.3d at 1250 (emphasis omitted).

Finally, the ICA addressed MLN's Count VI claims brought under article XI, section 9 of the Hawai'i Constitution. Article XI, section 9 provides in full:

> Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources. Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

MLN asserted that its article XI, section 9 claims arose under HRS chapters 46, 205, and 343.[7] The ICA acknowledged that the application of the doctrine of exhaustion of administrative remedies to these claims presented an issue of first impression. Id. Reviewing the plain language and history of the constitutional provision, as well as the relevant caselaw, the ICA concluded that the court-developed doctrine of exhaustion did not apply to MLN's article XI, section 9 claims. Id. at 561, 542 P.3d at 1256. Nonetheless, the ICA held that MLN's article XI, section 9 claims were still subject to the jurisdictional limitations provided under HRS § 632-1, which the ICA characterized as "akin to a legislative codification of the exhaustion doctrine." Id. at 562-63, 542 P.3d at 1257-58. Applied to Count VI, the ICA concluded:

---

[7] The ICA noted that "[t]he parties do not dispute that HRS Chapters 46, 205, and 343 establish 'laws relating to environmental quality' within the meaning of article XI, section 9." Maui Lani Neighbors, 153 Hawai'i at 560, 542 P.3d at 1255.

> This legislatively created limitation allowed for members of MLN to participate in the agency action to enforce existing zoning requirements and to decide whether approval of the CUP was consistent with constitutional provisions, statutes and County plans, codes and regulations, which provided for a reasonable limitation. Therefore, HRS § 632-1 precludes MLN's article XI, section 9 claims as defined by HRS Chapters 46 and 205.

Id. at 563, 542 P.3d at 1258.

The ICA further concluded:

> [T]o the extent MLN's article XI, section 9 claim defined by HRS chapter 343 seeks a declaratory judgment that the CUP is invalid, HRS § 632-1 precludes that claim. To the extent that MLN's article XI, section 9 claim defined by HRS chapter 343 seeks relief other than to invalidate the CUP, such a claim is not precluded by HRS § 632-1.

Id.

D.  **Application for Writ of Certiorari**

On March 25, 2024, MLN timely filed its application, in which it presents seven questions to this court.[8]  At bottom,

---

8    MLN's questions presented are:

1.    Whether the ICA erred in ignoring HRS § 91-14's express provision for "other means of review, redress, [or] relief" to address an agency's actions, including review under the Hawai'i Constitution, HEPA, and HRS § 632-1.

2.    Whether the ICA erred in concluding that a court can only review claims that challenge the validity of an agency's actions through an appeal under HRS § 91-14, where the claims are originally cognizable in court and not in the agency.

3.    Whether the ICA erred in concluding that HRS § 632-1 codifies the exhaustion doctrine, such that it bars claims under article XI, section 9 of the Hawai'i Constitution; also, whether the plain language of HRS § 632-1 allows for declaratory relief, even where other statutory remedies exist, provided that "the other essentials to such relief are present."

4.    Whether the plain language of HRS § 46-4 allows a directly affected landowner a private right of action
(continued . . .)

24

MLN's questions, as argued, challenge the ICA's conclusion that the Planning Commission had exclusive original jurisdiction over the claims asserted in MLN's Complaint.  Further, MLN reiterates its argument below that, even if the Planning Commission had exclusive original jurisdiction, exhaustion of the available administrative remedies would have been futile and, thus, the circuit court was not divested of jurisdiction to adjudicate MLN's claims.  Specifically, as to Count V, MLN argues that "the ICA erred in dismissing MLN's HEPA claims, where HRS § 343-7 provides for original jurisdiction" in the circuit court.  Finally, as to Count VI, MLN argues that the ICA erred in holding that MLN's article XI, section 9 claims were precluded by the jurisdictional limitation in HRS § 632-1.  Given the

---

(. . . continued)
                    to seek a civil proceedings appeal from any final
                    order of a zoning agency.

          5.    Whether the exhaustion doctrine applies to an
                original action under HRS § 46-4 that challenges an
                agency's issuance of an ultra vires permit; also,
                whether such an illegal permit is void as a matter of
                law and vests no property rights.

          6.    Whether the ICA erred in dismissing MLN's HEPA
                claims, where HRS § 343-7 provides for original
                jurisdiction independent from an administrative
                proceeding under HRS § 91-14.

          7.    Whether the exceptions to the exhaustion doctrine
                apply in this case, where exhaustion was futile,
                there were no effective remedies, and the policy
                interests underlying the doctrine were clearly
                outweighed by other interests.

(Brackets in original).

foregoing arguments, MLN asks that we reverse the ICA and remand to the circuit court for further proceedings.

Amici curiae David Kimo Frankel and Hui Hoʻopulapula Nā Wai o Puna and Conservation Council of Hawaiʻi filed briefs in support of MLN's application.  Specifically, amici support MLN's arguments that HRS § 91-14 expressly allows for other means of relief from an agency decision, the doctrine of exhaustion does not apply to HEPA claims, and MLN's article XI, section 9 claims should not be precluded by HRS § 632-1.

The State and intervenor A&B filed separate responses to MLN's application and to each of the amici's briefs.  MLN filed a reply in support of its application.

### III.   STANDARDS OF REVIEW

### A.   Subject Matter Jurisdiction

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard."  State v. Nakanelua, 134 Hawaiʻi 489, 501, 345 P.3d 155, 167 (2015) (quoting Riethbrock v. Lange, 128 Hawaiʻi 1, 11, 282 P.3d 543, 553 (2012)).

### B.   Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

Lingle v. Haw. Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (quotations omitted) (ellipses, brackets and quoting Guth v. Freeland, 96 Hawai'i 147, 149-50, 28 P.3d 982, 984-85 (2001)).

## C. Constitutional Law

"We review questions of constitutional law de novo, under the right/wrong standard. Thus, this court exercises its own independent constitutional judgment, based on the facts of the case." In re FG, 142 Hawai'i 497, 503, 421 P.3d 1267, 1273 (2018) (internal quotations omitted) (citations omitted).

## IV.   DISCUSSION

### A.   The Circuit Court Properly Dismissed Counts I, II, III, IV, VIII, and IX

#### 1.   MLN failed to exhaust administrative remedies

It is well settled in our caselaw that the doctrine of exhaustion of administrative remedies applies "where a claim is cognizable in the first instance by an administrative agency alone."  Kellberg, 131 Hawai'i at 527, 319 P.3d at 446 (quoting Kona Old Hawaiian Trails Grp. ex. rel. Serrano v. Lyman (Kona Old), 69 Haw. 81, 93, 734 P.2d 161, 169 (1987)).  In such cases, where an agency has exclusive original jurisdiction over a claim, "judicial review of agency action will not be available unless the party affected has taken advantage of all the corrective procedures provided for in the administrative process."  Id. (brackets omitted) (quoting Kona Old, 69 Haw. at 93, 734 P.2d at 169).  It is further established by our precedent that "[i]n order for the doctrine to apply, the statute, ordinance or regulation under which the agency exercises its power must establish clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties."  Id. at 536, 319 P.3d at 455 (internal quotation marks and brackets omitted) (quoting Pele Def. Fund v. Puna Geothermal Venture, 9 Haw. App. 143, 152, 827 P.2d 1149, 1154 (App. 1992)).  As the ICA correctly concluded, such

28

"clearly defined machinery" was in place here to address MLN's claims relating to the Sports Park and the Planning Commission's approval of DLNR's CUP application.

Under HRS § 46-4, the County is vested with zoning powers, which include the power to "prescribe rules, regulations, and administrative procedures" necessary for the enforcement of "any ordinance enacted in accordance with this section." HRS § 46-4(a). The zoning ordinances enacted by the Maui County Council are codified in MCC title 19. Ordinances relating to the agricultural district are codified in MCC chapter 19.30A, an express purpose of which is to "[i]mplement chapter 205, [HRS], and the goals and policies of the Maui County general plan and community plans." MCC § 19.30A.010(A)(1) (2013).

In certain circumstances, lands in the agricultural district may be put to special uses, which under MCC § 19.30A.060(H) include "[o]pen land recreation uses, structures or facilities . . . including . . . playing fields, accessory buildings and structures." This court has explained special uses as uses "expressly permitted by ordinance or statute on proof that certain facts and conditions exist, without altering the underlying zoning classification." Neighborhood Bd. No. 24 (Waianae Coast) v. State Land Use Comm'n, 64 Haw. 265, 271, 639 P.2d 1097, 1102 (1982). Special use permits for the Maui County

29

agricultural district are subject to the requirements of MCC §

19.510.070, which provides in part:

> A.   Compliance Required.  A special use permit shall comply with the provisions of this section and with the policies and objectives of the general plan and community plans of the county, the Hawaii Revised Statutes, and the revised charter of the county.
>
> B.   Criteria for Permit.  Subject to the provisions of this chapter, the appropriate planning commission shall review and, after a public hearing, may approve a request for a special use if the commission finds that each of the following criteria have been met:
>
> > 1.   The proposed request <u>meets the intent of the general plan and the objectives and policies of the applicable community plan of the county</u>;
> >
> > 2.   The proposed request is <u>consistent with the applicable community plan land use map of the county</u>;
> >
> > 3.   The proposed request <u>meets the intent and purpose of the applicable district</u>;
> >
> > 4.   The proposed development will not adversely affect or interfere with public or private schools, parks, playgrounds, water systems, sewage and solid waste disposal, drainage, roadway and transportation systems, or other public requirements, conveniences, and improvements;
> >
> > 5.   The proposed development will not adversely impact the social, cultural, economic, environmental, and ecological character and quality of the area;
> >
> > 6.   That the public shall be protected from the deleterious effects of the proposed use;
> >
> > 7.   That the need for public service demands created by the proposed use shall be fulfilled; and
> >
> > 8.   If the use is located in the state agricultural and rural district, the commission shall review whether the use complies with the guidelines established in section 15-15-95 of the rules of the land use commission of the State.
>
> C.   Application process.  All applications for a special use permit shall comply with the application

procedures established in sections 19.510.010 and 19.510.020 of this code; provided, that if a state special use permit is required, requirements of chapter 205 shall also apply.

. . . .

E.   The planning commission may impose conditions on the granting of a request for a special use if the conditions are reasonably conceived to mitigate the impacts emanating from the proposed land use.

(Emphasis added.)

Under the County's general application procedures, CUP applicants are required to mail notice of both the application and the public hearing "to all owners and lessees of record located within a five-hundred-foot distance from the subject parcel."  MCC §§ 19.510.010(E) (2013); 19.510.020(A)(4)(a) (2013); see also 19.510.070(C).  Further procedures are set forth in the Maui Planning Commission Rules of Practice and Procedure (MPC Rules), which expressly provide rights to intervene in a CUP proceeding.  MPC Rules § 12-201-39 (eff. 1993).  Indeed, any person who "can demonstrate they will be so directly and immediately affected by the matter before the commission that their interest in the proceeding is clearly distinguishable from that of the general public shall be admitted as parties upon timely application for intervention." MPC Rules § 12-201-41(b) (eff. 2010).

Whether a petitioner is admitted as a party to the proceeding or not, the rules expressly allow for judicial review

31

of the Planning Commission's decision pursuant to HRS § 91-14.
MPC Rules §§ 12-201-46 (eff. 1993) (granting rights to appeal
from a denial of intervention), 12-201-85 (eff. 1993) (granting
parties to proceedings a right to appeal), 12-201-32 (eff. 1993)
("Final decisions of the commission may be appealed pursuant to
chapter 91, HRS, as amended.").  HRS § 91-14(a) provides that
"[a]ny person aggrieved by a final decision and order in a
contested case or by a preliminary ruling of the nature that
deferral of review pending entry of a subsequent final decision
would deprive appellant of adequate relief is entitled to
judicial review thereof under this chapter[.]"  Further, under
HRS § 91-14(g), the circuit court is empowered to address claims
that an agency misapplied an ordinance, exceeded its statutory
authority, or violated constitutional provisions.  HRS § 91-
14(g) provides:

> Upon review of the record, the court may reverse or
> modify the decision and order if the substantial rights of
> the petitioners may have been prejudiced because the
> administrative findings, conclusions, decisions, or orders
> are:
>
> (1)   In violation of constitutional or statutory
>       provisions; or
>
> (2)   In excess of the statutory authority or jurisdiction
>       of the agency; or
>
> (3)   Made upon unlawful procedure; or
>
> (4)   Affected by other error of law; or
>
> (5)   Clearly erroneous in view of the reliable, probative,
>       and substantial evidence on the whole record; or
>
> (6)   Arbitrary, or capricious, or characterized by abuse

of discretion or clearly unwarranted exercise of
discretion.

The record in this case plainly shows that MLN's members did not avail themselves of this "clearly defined machinery" to challenge the issuance of the CUP. As recounted above, numerous future members and officers of MLN received actual notice of the CUP hearing, and of their rights to intervene, more than a month in advance. And although several of MLN's future members testified at the CUP hearing,[9] none of them petitioned to intervene in the proceedings. Nonetheless, those individuals who participated in the CUP hearings had standing to appeal the Planning Commission's decision under HRS § 91-14(a). See In re Haw. Elec. Light. Co., 145 Hawai'i 1, 22, 445 P.3d 673, 694 (2019) (quoting Mahuiki v. Plan. Comm'n, 65 Haw. 506, 515, 654 P.2d 874, 880 (1982)) ("Although an aggrieved person must have participated in a contested case in order to invoke judicial intervention, we have not 'conditioned standing to appeal from an administrative decision upon formal intervention in the agency proceeding.'"); HRS § 91-14(a) ("Any

---

[9] The parties do not dispute that the March 25, 2014 CUP hearing met the definition of a contested case under HRS § 91-1 (2012). A "contested case" is defined as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91-1(b). Here, the Planning Commission was required to hold a public hearing on the CUP application under MCC § 19.510.070. Further, under the MPC rules any proceeding "in which action by the commission will result in a final determination of the legal rights, duties or privileges of a specific party or parties" is considered a "contested case." MPC Rules § 12-201-39.

person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review thereof under this chapter[.]").  However, even after being made aware that the Planning Commission had granted the CUP, which was in no event later than July 12, 2014, MLN failed to maintain an appeal of the Planning Commission's decision pursuant HRS § 91-14.[10] Accordingly, we affirm the ICA's conclusion that MLN failed to exhaust the available administrative remedies as to Counts I, II, III, IV, VIII, and IX.

2.    **HRS § 91-14's express provision for "other means of review, redress, [or] relief" does not apply to MLN's claims challenging the CUP**

In support of its request that we reverse and remand, MLN argues that "[t]he ICA gravely erred in concluding that HRS § 91-14 provides an exclusive remedy, where, by its plain terms, § 91-14 is not exclusive."  (Emphases omitted.)  MLN's argument is echoed by amici Hui Hoʻopulapula Nā Wai o Puna and Conservation Council of Hawaiʻi, who contend that "[t]he common flaw pervading the ICA's decision is its reliance on chapter 91 as an 'exclusive' remedy, directly contrary to the legislature's direction that it is not exclusive."  (Emphases omitted.)

_____

[10]    We note that future MLN director Tina Hoenig filed a chapter 91 appeal on May 12, 2014.  However, for reasons that do not appear in the record, Hoenig later stipulated to dismiss her appeal without prejudice after MLN was incorporated.

MLN and the amici base these contentions on HRS § 91-14(a), which provides in part, "nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law."  Here, MLN emphasizes that HRS § 343-7, HRS § 632-1, and article XI, section 9 of the Hawai'i Constitution each provide "other means of review independent from the limited jurisdiction of the Planning Commission."  (Emphases omitted.) The argument follows that, if the remedies available under chapter 91 are not "exclusive," then the doctrine of exhaustion of administrative remedies has no application to bar MLN's claims in the circuit court.  See Pac. Lightnet, Inc. v. Time Warner Telecom, Inc., 131 Hawai'i 257, 269, 318 P.3d 97, 109 (2013) (citing Kona Old, 69 Haw. at 93, 734 P.2d at 169) ("[A]pplying the doctrine of exhaustion requires that the claim be only cognizable before the agency.").

MLN and amici correctly note that HRS § 91-14 does not preclude other remedies "provided by law."  We recognized as much in Bush v. Hawaiian Homes Commission, a case in which we articulated that, under HRS § 91-14(a), citizens "are not barred from contesting [an agency's] actions through alternative

means."[11]  76 Hawai'i 128, 137, 870 P.2d 1272, 1281 (1994).

However, we also clarified that parties "are prohibited from

accessing review of these actions through inappropriate means."

Id.  With the exception of MLN's HEPA claims, discussed below,

there are no other remedies "provided by law" that are available

to MLN in the circumstances of this case.  As discussed in

detail below, each of MLN's alternative arguments for original

jurisdiction in the circuit court fails.  Thus, HRS § 91-14's

non-exclusivity clause has no application to MLN's claims as

pleaded.

> a.   **Zoning claims are barred by MLN's failure to
>      exhaust administrative remedies**

MLN maintains that it has a private right of action to

enforce its zoning claims under the plain language of HRS § 46-

4(a), which provides that "ordinances may be enforced . . . at

the suit of the county or the owner or owners of real estate

directly affected by the ordinances."  (Emphasis added.)  In

---

[11]      In Bush, appellants were precluded from obtaining appellate
review pursuant to HRS § 91-14(a) because no contested case hearing had
occurred.  76 Hawai'i at 136, 870 P.2d at 1280.  In that context, the court
expressed that "[t]o disallow an appeal under HRS § 91-14(a) with no
alternative would seem unjust inasmuch as the [agency] would therefore hold
what appears to be unfettered discretion to grant or deny a contested case
hearing, thereby controlling appellate review."  Id. at 136-37, 870 P.2d
1280-81.  That is not the case here, where a contested case is mandatory for
any CUP application under the MCC § 19.510.070(B), and where such hearing
actually occurred.  Thus, unlike the appellants in Bush, MLN through its
members had rights to intervene in the CUP proceedings and to appeal the
Planning Commission's final decision under HRS § 91-14.  See MPC Rules § 12-
201-41; In re Haw. Elec. Light Co., 145 Hawai'i at 22, 445 P.3d at 694
(holding that an aggrieved party who participated in a contested case but did
not formally intervene had standing to appeal under HRS § 91-14).

support of this contention, MLN cites to the ICA's previous opinion in Pavsek, in which the ICA stated that "the plain language of [HRS § 46-4(a)] clearly manifests the Legislature's intent to create a private right of action."  127 Hawai'i at 397, 279 P.3d at 62.  This right of action, MLN argues, encompasses the right to bring an enforcement action against the County itself.

The ICA rejected MLN's argument and found Pavsek to be distinguishable from the circumstances of this case.  Maui Lani Neighbors, 153 Hawai'i at 545, 542 P.3d at 1240.  We agree.  In Pavsek, the plaintiffs brought suit against three neighboring property owners who were allegedly operating short-term rentals in violation of a land use ordinance.  127 Hawai'i at 392-93, 279 P.3d at 57-58.  Under those circumstances, where there had been no agency process and the plaintiffs sought to enjoin non-permitted activity, the ICA held that the circuit court had subject matter jurisdiction over the plaintiffs' zoning enforcement claims.  Id. at 399-400, 279 P.3d at 64-65.  The facts of that case clearly do not align with the circumstances here, where the Sports Park uses that MLN has challenged are permitted uses approved through the agency process prescribed by ordinance pursuant to HRS § 46-4.  Each of the zoning claims brought under Count I could have been addressed by the Planning

37

Commission and subsequently reviewed by the circuit court in the context of a chapter 91 appeal.

Moreover, the ICA's opinion in Pavsek lends further support to the conclusion that MLN's zoning claims needed to be addressed by the Planning Commission in the first instance. After concluding that the Pavsek plaintiffs had a private right of action under HRS § 46-4, the ICA further concluded that those claims were subject to the doctrine of primary jurisdiction. Id. at 400, 279 P.3d at 65. Thus, even where the ICA recognized a private right of action under HRS § 46-4(a) to seek judicial enforcement of a land use ordinance against a third-party, it held that plaintiffs were first "required to seek an administrative determination of their claim . . . before proceeding with their suit." Id. at 393, 279 P.3d at 58 (emphasis added). The ICA explained its reasoning as follows:

> The adjudication of the [Plaintiffs'] zoning enforcement claim requires the resolution of whether Defendants violated the [Land Use Ordinance]. The Hawai'i Legislature has granted to the City the power to establish and enforce zoning laws, and the City, in turn, has placed determinations of zoning violations within the special competence of the Director of the [Department of Planning and Permitting] and the [Zoning Board of Appeals]. Thus, the [Plaintiffs'] zoning enforcement claim satisfies the conditions for applying the primary jurisdiction doctrine. Furthermore, the policy of promoting uniformity and consistency in the regulatory process, which underlies the primary jurisdiction doctrine, would be served by applying the doctrine to the [Plaintiffs'] enforcement claim.

Id. at 400, 279 P.3d at 65 (footnotes omitted) (citations omitted).

38

Applying the same reasoning here, the adjudication of MLN's claims first required a decision by the relevant county agency, here the Planning Commission, whether the Sports Park uses were in violation of the zoning ordinance. And unlike in Pavsek, plaintiffs here had the opportunity to, and did in fact, participate in an administrative process to determine whether the proposed Sports Park uses were in compliance with county zoning ordinances. By issuing the CUP, through procedures prescribed by ordinance and the MPC Rules, the Planning Commission determined that the Sports Park uses met the criteria for a CUP. Under these circumstances, the appropriate means to review the Planning Commission's decision was through a chapter 91 appeal and not an original action in court. HRS § 91-14(a); MPC Rules § 12-201-39.

Further, the plain language and legislative history of HRS § 46-4(a) support the conclusion that the right of action created under that statute is meant to supplement the counties' enforcement authority and not to authorize a collateral attack on an agency decision outside of the administrative appeals process. HRS § 46-4(a) also provides:

> The powers granted herein shall be liberally construed in favor of the county exercising them, and in such a manner as to promote the orderly development of each county or city and county in accordance with a long-range, comprehensive general plan to ensure the greatest benefit for the State as a whole.

In enacting the law now codified as HRS § 46-4, the legislature in 1957 expressed that "[a]dequate controls must be established, maintained and <u>enforced by responsible agencies of government</u>." 1957 Haw. Sess. Laws Act 234, § 1 at 253 (emphasis added). This court has acknowledged that "[u]niformity and consistency in the regulation of business entrusted to a particular agency are secured . . . by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization." <u>Kona Old</u>, 69 Haw. at 93, 734 P.2d at 169 (quoting <u>Far East Conf. v. United States</u>, 342 U.S. 570, 574-75 (1952)). Here, allowing MLN to challenge the substance of the Planning Commission's decision through an original action independent from an administrative proceeding under HRS § 91-14 would be counter to the uniform and consistent regulation of land use contemplated by MCC chapter 19.30A and HRS § 46-4. <u>See id.</u>

For the foregoing reasons, under the circumstances of this case, we conclude that the circuit court did not have original jurisdiction to adjudicate MLN's violation of zoning claims under HRS § 46-4.

      **b.**     **Declaratory relief under HRS § 632-1 is unavailable**

MLN also argues that the declaratory judgment statute, HRS § 632-1, provides for other means of review independent of the agency appeals process. This argument applies to Counts II, IV, IX, and, to the extent that MLN seeks declaratory relief related to all of its claims, to all other counts in the Complaint.

HRS § 632-1, titled "Jurisdiction; controversies subject to," establishes the requisite elements for the circuit court to exercise jurisdiction over a declaratory judgment action. Within HRS § 632-1(b), there is provided a limitation that states, "[w]here . . . a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed." This court has interpreted this limitation as a bar to jurisdiction. Punohu, 66 Haw. at 487, 666 P.2d at 1134 (citing Traveler's Ins. Co. v. Haw. Roofing, Inc., 64 Haw. 380, 641 P.2d 1333) ("We have held that where such a statutory remedy exists, declaratory judgment does not lie."). More, this court has held that "the remedy of appeal" of a contested case proceeding provided by HRS § 91-14, "is a statutorily provided special form of remedy" such "that a declaratory judgment action, pursuant to § 632-1, HRS, did not lie." Id. at 487, 666 P.2d at 1135.

In Punohu, individual welfare recipients brought declaratory actions related to reductions in their public assistance benefits. Id. at 486, 666 P.2d at 1134. There, the record established that each of the plaintiffs were sent notice

> informing them of intended reductions in their benefits. The notices informed each of the appellees of their right to appeal and have a fair hearing before the Department [of Social Services and Housing]. Such a right of appeal and hearing was mandated by the provisions of § 346-12, [HRS]. Such a hearing was held in each case and the reductions in benefits were upheld.

Id.

On appeal, this court determined that the "fair hearing" before the department was a contested case, "and as such, was reviewable only in accordance with the provisions of § 91-14, HRS." Id. at 487, 666 P.2d at 1135. Further, we held:

> Since the scope of review vested in the circuit court in an appeal pursuant to § 91-14, HRS, is much more limited than the court's plenary authority in an original action commenced before it, it would be anomalous to permit a declaratory judgment action to be substituted for an appeal from an agency determination in a contested case.

Id.

Amici Hui Hoʻopulapula Nā Wai o Puna and Conservation Council of Hawaiʻi emphasize that Punohu did not address the express savings clause provided in HRS § 91-14. As a counter to Punohu, amici and MLN cite to a later case, Hawaii's Thousand Friends v. City & County of Honolulu, 75 Haw. 237, 858 P.2d 726 (1993). There, the plaintiff filed a petition under HRS § 632-1 seeking a declaration that the City and County of Honolulu's

42

Department of Parks and Recreation was required to obtain a special management area use permit prior to its proposed demolition of several structures located within the coastal zone management area. Id. at 239-41, 858 P.2d at 728-29. The defendant City argued that plaintiff's declaratory action was precluded because there was a specific statutory remedy available under HRS § 205A-6 (1985). Id. at 451-242-858 P.2d at 729. This court rejected the City's arguments as follows:

> [T]he City's contentions are without merit. As previously noted, HRS § 205A-6(e) specifically provides that "[n]othing in this section shall restrict any right that any person may have to assert any other claim or bring any other action." HRS § 205A-6 therefore clearly allowed [plaintiff] to bring a generic declaratory action under HRS § 632-1 without the need to proceed under HRS § 205A-6.

Id. at 245, 858 P.2d at 731.

Applied here, both MLN and the amici argue that Hawaii's Thousand Friends supports the conclusion that the availability of an agency appeal under HRS § 91-14 does not preclude a declaratory judgment action under HRS § 632-1. But that conclusion ignores the express holding in Punohu that HRS § 91-14 is a special form of statutory remedy that precludes a declaratory action. 66 Haw. at 487, 666 P.2d at 1135. The similarity of the statutory language notwithstanding, Hawaii's Thousand Friends has no bearing on this court's interpretation of HRS § 91-14. Unlike the proceedings initiated under HRS § 91-14, in which the scope of review is limited to the

43

administrative record, HRS § 205A-6 provides for an original action in court.  Thus, the court's reasoning in Punohu, that "it would be anomalous to permit a declaratory judgment action to be substituted for an appeal from an agency determination in a contested case," did not factor in the disposition of Hawaii's Thousand Friends.  Punohu, 66 Haw. at 487, 666 P.2d at 1135.

Moreover, the present circumstances align far more closely with the facts of Punohu than they do with those of Hawaii's Thousand Friends.  MLN argues that "Punohu merely confirms the basic proposition that where a plaintiff has participated in a full and fair contested case hearing, a plaintiff should appeal under HRS § 91-14 rather than seek to duplicate the relief that the administrative agency could provide in the first instance alone."  (Emphases omitted.)  But as intervenor A&B emphasizes in response, MLN "describes its own circumstances."  (Emphases omitted.)  Several individuals who would later become officers and members of MLN received actual notice of the CUP hearing and of their rights to intervene. These same individuals were made aware of the Planning Commission's CUP decision in no event later than July 12, 2014. Further, MLN does not dispute that it was subject to the notice received by its members.  Thus, an appeal after a full and fair contested case hearing was available to MLN as a statutorily

provided special form of remedy under HRS § 91-14.  See Punohu,
66 Haw. at 487, 666 P.2d at 1135.

Further, the declaratory relief MLN seeks in its
Complaint is duplicative of the relief that would have been
available to MLN through the administrative process.  Through
Counts II and IV, MLN seeks declaratory judgment that the CUP is
void as a matter of law and cannot meet the minimum lot size
requirements of the regional park district.[12]  Count VIII alleges
that the County violated MLN's due process rights by employing
the "expedited special use process" and not "the more thorough
change in zoning process."  Each of these claims allege
violations of zoning and ultimately challenge the substance of
the Planning Commission's decision to issue the CUP.

As to Count III, MLN seeks a declaration that the
special use ordinance, MCC § 19.30A.060(H), is
unconstitutionally vague and ambiguous.  To the extent that this
claim represents an independent challenge to the ordinance
itself, rather than a further challenge to the CUP, it may be
cognizable in the circuit court.  See Citizens for the Prot. of
the N. Kohala Coastline v. Cnty. of Hawaiʻi (N. Kohala), 91
Hawaiʻi 94, 102, 979 P.2d 1120, 1128 (1999) (allowing for a

_____

[12]    The regional park district, defined and regulated under MCC
§ 19.615.040 (2013), is a specific county zoning district entirely separate
from the agricultural district.

45

declaratory action where the complaint went beyond the substance of an agency's decision to challenge the validity of the underlying ordinance).  However, as argued by MLN before the circuit court, Count III does not present a challenge to the special use ordinance as a matter of law.  Rather, Count III is a substantive, fact-dependent challenge to the Planning Commission's interpretation of the ordinance within the context of the CUP approval.

Had MLN pursued judicial review of the CUP decision pursuant to HRS § 91-14, each of the aforementioned claims could have been appropriately addressed under HRS § 91-14(g).  For the foregoing reasons, we hold that the circuit court and the ICA correctly relied on Punohu to determine that declaratory relief was not available to MLN under the circumstances of this case.

**B.   MLN's Article XI, Section 9 Claims**

The ICA further applied Punohu to support its holding that "HRS § 632-1 provides reasonable limitations and regulation of MLN's article XI, section 9 claims."  Maui Lani Neighbors, 153 Hawai'i at 562, 542 P.3d at 1257.  MLN argues that its article XI, section 9 claims are not precluded by HRS § 632-1. These constitutional claims, MLN emphasizes, can stand on their own.

Enacted by constitutional amendment in 1978, article XI section 9

> has both a substantive and procedural component. First, it recognizes a substantive right "to a clean and healthful environment," with the content of that right to be established not by judicial decisions but rather "as defined by laws relating to environmental quality." Second, it provides for the enforcement of that right by "any person" against "any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law."

Ala Loop, 123 Hawaiʻi at 409, 235 P.3d at 1121 (footnote omitted).

Applying this two-step framework, the ICA first acknowledged that there has been no challenge to the substantive component of MLN's claims. Maui Lani Neighbors, 153 Hawaiʻi at 560, 542 P.3d at 1255. Here, MLN defines its claims as arising under HRS chapters 46, 205, and 343. Progressing to the procedural inquiry, the ICA next considered whether MLN's substantive rights, as asserted, were subject to any "reasonable limitations and regulation as provided by law." Haw. Const. art. XI, § 9.

As pleaded, MLN's article XI, section 9 claims are simply an incorporation and reassertion of "[t]he violations set forth in the allegations in the Counts above." In dismissing these claims, the circuit court concluded that article XI, "[s]ection 9 does not provide a substantive claim independent from the laws relating to environmental quality. Rather,

47

section 9 merely provides a private right of action." Thus, the circuit court concluded further, these claims "could have been raised before the Planning Commission and/or on appeal under HRS chapter 91" and are therefore "subject to the exhaustion doctrine, which is a reasonable limitation as provided by law." (Internal quotations marks and brackets omitted.)

On appeal, the ICA disagreed with the circuit court's conclusion, not that exhaustion applied as a reasonable limitation, but that it was a limitation "provided by law." Looking to the history of the constitutional provision, the ICA concluded that the power to impose limitations and regulation to enforce the substantive rights under article XI, section 9 was given specifically to the legislature. Maui Lani Neighbors, 153 Hawai'i at 561, 542 P.3d at 1256. Therefore, because exhaustion and the related doctrine of primary jurisdiction are judicially created, "they do not limit enforcement of article XI, section 9 claims." Id.

With exhaustion off the board, the ICA next analyzed whether HRS § 632-1 would provide a reasonable limitation MLN's article XI, section 9 claims. "Applied to this case," the ICA determined, "HRS § 632-1 would preclude a declaratory judgment action because MLN had the opportunity to raise its article XI, section 9 claims in the contested case before the Planning

Commission and seek judicial review through an appeal provided by HRS § 91-14." Id. at 561-62, 542 P.3d at 1256-57. Under these circumstances, the ICA determined "that HRS § 632-1 provides reasonable limitations and regulation of MLN's article XI, section 9 claims." Id. at 562, 542 P.3d at 1257. This limitation, the ICA explained, is consistent with the intent of article XI, section 9 and functions to "preserve the integrity of the administrative process." Id. at 562, 542 P.3d at 1258.

MLN and the amici raise numerous challenges to the ICA's decision, which we distill into two primary inquiries. First, whether HRS § 632-1 has any application to MLN's claims where article XI, section 9 itself creates a private right of action. And second, if applicable, whether HRS § 632-1 provides for reasonable limitation and regulation of MLN's claims within the meaning of article XI, section 9.

As to the first inquiry, we conclude that MLN's claims were subject to the jurisdictional limitation provided in HRS § 632-1. Count VI, although not expressly pleaded under HRS chapter 632, clearly presents a claim for declaratory relief. See Troyer v. Adams, 102 Hawai'i 399, 411, 77 P.3d 83, 95 (2003) (explaining that the character of an action "is determined from the substance of the entire pleading, the nature of the grievance, and the relief sought, rather than from the formal

language employed or the form of the pleadings"). The circuit courts have jurisdiction to hear declaratory actions through HRS § 632-1. Thus, even though MLN's cause of action arises out of article XI, section 9, it is still subject to the jurisdictional limitations of its chosen remedy.

Applied here, we agree with the ICA that HRS § 632-1 would preclude a declaratory judgment on MLN's article XI, section 9 claims as defined under HRS chapters 46 and 205. Those claims reiterate and seek the same relief as MLN's zoning claims discussed above. Accordingly, MLN had opportunity to raise those claims through the CUP process and on appeal pursuant to HRS § 91-14 and is thus precluded from bringing them in an original action before the court. The next inquiry is whether such preclusion of MLN's right to seek enforcement pursuant to article XI, section 9 constitutes a "reasonable limitation . . . as provided by law." In answering this inquiry, we address the application of the limitation in this case within the context of the constitutional provision, its history, and our own caselaw.

The further contours of article XI, section 9 are described in its history as articulated by the Committee on Environment, Agriculture, Conservation and Land from the 1978 Constitutional Convention. As to the procedural component, the Committee's report explains:

50

Your Committee believes that this important right deserves enforcement and has removed the standing to sue barriers, which often delay or frustrate resolutions on the merits of actions or proposals, and provides that individuals may directly sue public and private violators of statutes, ordinances and administrative rules relating to environmental quality.  The proposal adds no new duties but does add potential enforcers.  <u>This private enforcement right complements and does not replace or limit existing government enforcement authority</u>.

Your Committee intends that <u>the legislature may reasonably limit and regulate this private enforcement right by, for example, prescribing reasonable procedural and jurisdictional matters</u>, and a reasonable statute of limitations.

Your Committee believes that this new section adequately recognizes the right to a clean and healthful environment and at the same time would prevent abuses of this right.  Concern was expressed that the exercise of this right to a clean and healthful environment would result in a flood of frivolous lawsuits.  However, your Committee believes that if environmental law enforcement by government agencies is adequate in practice, then there should be few additional lawsuits, given the barriers that litigation costs present.

Moreover, your Committee is convinced that <u>the safeguards of reasonable limitations and regulations as provided by law should serve to prevent abuses of the right to a clean and healthful environment</u>.

Stand. Comm. Rep. No. 77 in 1 <u>Proceedings of the Constitutional Convention of Hawai'i of 1978</u>, at 690 (emphases added).

As recounted above, the Committee contemplated that the legislature would prescribe certain reasonable procedural and jurisdictional limitations.  In <u>Ala Loop</u>, we held that "[t]he abolishment of the private right altogether . . . would not be a 'reasonable' limitation within the meaning of the provision."  123 Hawai'i at 418, 235 P.3d at 1130.  Here, HRS § 632-1 precludes MLN from seeking a declaratory judgment on its

article XI, section 9 claims relating to the CUP and that is the full extent of the preclusion. Unlike Ala Loop, where there was no agency process and no permit was issued, in the present case there was no bar to MLN asserting its article XI, section 9 rights before the Planning Commission or challenging an adverse decision on appeal. Indeed, in Ala Loop, the question was whether a charter school was required to obtain a special permit for its uses in the state agricultural district. Id. at 395-96, 235 P.3d at 1107-08. The effective relief sought was that the school would have to apply for a permit to the LUC, who would then decide if the school's uses were appropriate. See id. at 396, 235 P.3d at 1108. Here, the DLNR applied for and obtained a permit from the Planning Commission through the prescribed procedures. Thus, MLN's claims do not evince a matter of procedural injury, but rather a challenge to the substance of the agency's decision. As established above, the proper avenue of relief in such case is through an administrative appeal under HRS chapter 91.

MLN argues under In re Application of Maui Electric Co. (MECO), 141 Hawai'i 249, 267, 408 P.3d 1, 19 (2017), that article XI, section 9 claims cannot be limited to an exclusive process. But this argument is unavailing. For one, MECO is distinguishable as the appellant in that case was denied the

right to intervene in a contested case hearing before the Public Utilities Commission.  Id. at 255, 408 P.3d at 7.  Indeed, the entire subject of the appeal was the appellant's right to a hearing before the agency, and not an original action in the circuit court.  Id. at 269, 408 P.3d at 21.  Further, in explaining our holding, we expressed why participation in a contested case hearing is preferable to a declaratory action when an agency decision implicates article XI, section 9 rights. We reasoned that

> A belated post-decision civil action for declaratory relief is not a replacement for participation in a hearing before the PUC, and it does not eliminate the risk of wrongful deprivation.  Short of the "extraordinary remedy" of a preliminary injunction, an administrative decision may go into effect during the pendency of a suit for declaratory relief.  This is of particular concern in the context of environmental regulations, where the damage caused by a violation is not easily reversed.  And requiring relitigation of agency decisions is inefficient and imposes an increased burden on the State in contrast to resolving the challenge in the initial decision-making process.

Id. at 267, 408 P.3d at 19 (citation omitted) (footnote omitted).

Any person may enforce their article XI, section 9 rights "through appropriate legal proceedings."  This private enforcement right is intended to complement existing government authority.  Stand. Comm. Rep. No. 77 in 1 Proceedings of the Constituional Convention of Hawaii of 1978, at 690.  HRS § 632-1 bars a declaratory action where an administrative appeal is

available because as this court has recognized, "it would be anomalous to permit a declaratory judgment action to be submitted for an appeal from an agency determination in a contested case." Punohu, 66 Haw. at 487, 666 P.2d at 1135. Here, the appropriate legal proceedings were the contested case hearing and an administrative appeal under HRS § 91-14.

As to MLN's article XI, section 9 claims as defined by HRS chapter 46 and 205, we affirm the ICA and hold that those claims are precluded by HRS § 632-1 under the circumstances of this case. As to MLN's article XI, section 9 claims as defined by HRS chapter 343, we hold those claims may proceed on remand pursuant to the discussion below.

## C. The Doctrine of Exhaustion Is Inapplicable to MLN's HEPA Claims

Finally, addressing MLN's HEPA claims, we agree with MLN that the circuit court has original jurisdiction to address these claims and, thus, exhaustion is inapplicable. Accordingly, the circuit court erred in dismissing Count V for lack of subject matter jurisdiction.

HRS chapter 343 establishes a system of environmental review to ensure that environmental concerns are given appropriate consideration along with economic and technical considerations in decision-making processes. This allows for parties to challenge agency actions directly through the court

system, as HRS § 343-7 explicitly contemplates a "judicial proceeding." Indeed, our courts frequently hear HEPA claims. See, e.g., Umberger v. Dep't of Land & Nat. Res., 140 Hawai'i 500, 403 P.3d 277 (2017); Kepo'o v. Kane, 106 Hawai'i 270, 103 P.3d 939 (2005); N. Kohala, 91 Hawai'i 94, 979 P.2d 1120. Clearly, the circuit court has jurisdiction to hear challenges brought pursuant to HRS § 343-7 given the plain language of the statute and extensive history of our courts hearing such cases.

Further, the Planning Commission has no jurisdiction to adjudicate MLN's HEPA claims as pleaded. MLN's allegations here do not challenge the CUP. Instead, they challenge the sufficiency of the FEA prepared by DLNR. Specifically, MLN alleges that: (1) DLNR failed to supplement the Final Environmental Impact Statement previously prepared for the larger Wai'ale development in violation of Hawai'i Administrative Rules (HAR) § 11-200-2 (eff. 1996) and (2) the Sports Park uses constitute illegal segmentation in violation of HAR § 11-200-7 (eff. 1996). The zoning powers granted to the Planning Commission under HRS § 46-4 vest the Commission with no authority to rule on these allegations and, while MLN could have raised issues with the FEA during the CUP process, ultimately, a challenge to the State's HEPA compliance is a claim properly brought before the courts.

The ICA held that "to the extent Count V seeks to invalidate the CUP, dismissal was warranted," and similarly, "[t]o the extent MLN's article XI, section 9 claims as defined by HRS [c]hapter 343 seek to invalidate the CUP, the [c]ircuit [c]ourt lacks jurisdiction." Maui Lani Neighbors, 153 Hawai'i at 534, 542 P.3d at 1229. This is not a proper distinction within the HEPA context. The sufficiency of environmental review is a necessary prerequisite to the adequacy of the CUP. See Umberger, 140 Hawai'i at 504, 403 P.3d at 281; Kepo'o, 106 Hawai'i at 291-92, 103 P.3d at 960-61. Thus, if the circuit court were to determine that there was not a proper environmental review, the CUP could be invalidated.

Unlike the other claims alleged in the complaint, the HEPA challenge does not get to the substance of the Planning Commission's decision, i.e., whether the Sports Park uses were consistent with county zoning requirements. Rather, a successful HEPA challenge "merely places a hold" on the development of the project until the agency "complies with the procedural and informational requirements of the statute." Kepo'o, 106 Hawai'i at 292, 103 P.3d at 961 (citations omitted). As we further explained in Kepo'o, voiding the permit "does not affirmatively dictate how the land may be used, . . . but, rather, has the incidental effect of stalling the proposed

project." Id. at 292-93, 103 P.3d at 961-62 (brackets omitted) (internal quotation marks omitted).

To be clear, our holding that MLN's HEPA claims may proceed without application of the doctrine of administrative remedies does not automatically vitiate the CUP. Indeed, the record reflects that there are additional findings necessary to resolving the HEPA issue on remand, including those regarding the timeliness of MLN's HEPA challenge.

Further, we recognize that should there be a determination by the circuit court that environmental review was insufficient, traditional remedies under HRS chapter 343 may not be available due to the length of time this case has been pending on appeal. Nonetheless, as we recently held in Unite Here! Local 5 v. PACREP LLC, HEPA claims are not rendered moot by a completed action. No. SCAP-22-0000601, 2025 WL 573299, at *15-16 (Haw. Feb. 21, 2025). At bottom, "the environmental review process is intended to be informational and forward-looking." Id. at *16. Accordingly, where invalidating the permit would not serve the interests of equity, "the issue of remedies for a HEPA violation is one of equitable discretion." Id. ("Even if a project has been completed, completion of a proper environmental review can provide forward-looking information, including, but not limited to, possible mitigation measures to ameliorate environmental effects.").

## V.   CONCLUSION

For the reasons explained above, we affirm the ICA's January 23, 2024 Judgment on Appeal as to Counts I, II, III, IV, VIII, IX, and parts of Count VI (the article XI, section 9 claim defined by HRS chapters 46 and 205), and reverse as to Count V and part of Count VI (the article XI, section 9 claim defined by HRS chapter 343).

The case is remanded to the circuit court for further proceedings consistent with this opinion.

Peter N. Martin
for petitioner

Miranda C. Steed, and
Daniel A. Morris
for respondents
State of Hawaiʻi, State of
Hawaiʻi Department of Land
and Natural Resources, State
of Hawaiʻi Board of Land and
Natural Resources,
Dawn N.S. Chang

Calvert G. Chipchase, and
Christopher T. Goodin
for intervenor
Alexander & Baldwin, LLC

David Kimo Frankel
on the briefs
for amicus curiae
David Kimo Frankel

Mahesh Cleveland, and
Isaac H. Moriwake,
on the briefs
for amici curiae
Hui Hoʻopulapula Nā Wai
o Puna and Conservation
Council for Hawaiʻi

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Vladimir P. Devens

/s/ Jeannette H. Castagnetti